Debra E. ROSE, Appellant,

v.

Duane A. ROSE, Appellee.

No. S–2036.

Supreme Court of Alaska.

June 10, 1988.

---

**1122**

Terri Ann Pollock and David Gorman, Kay, Saville, Coffey, Hopwood & Schmid, Anchorage, for appellant.

Allen M. Bailey, Ross, Gingras, Bailey & Miner, Anchorage, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

Debra E. Rose and Duane A. Rose were married in Anchorage, Alaska, on November 17, 1984. They lived together until their separation in May 1986. The marriage produced no children, but each partner had children from a previous marriage. Debra's two children, Victoria and Jonathan, lived with the couple throughout the marriage, as did Duane's daughter, Brandy.[1]

The parties each brought assets into the marriage. Debra owned a condominium and Duane owned a house. The family used Duane's home as a residence during their marriage. Each party had an automobile.[2] During their marriage, both parties were employed, Duane as a police officer, earning approximately $63,000 per year, and Debra as a service order clerk, earning approximately $27,000 per year. Both Duane and Debra have retirement plans through their employers.[3] Likewise, each party has a vacation plan which allows them to accumulate leave time which may be converted to cash. During the marriage Duane accumulated 216 hours of leave time; Debra accumulated seventeen hours.[4]

Shortly after the parties were married, Duane, who had substantial premarital savings, made a down payment on property in Kenai and took title in his own name. Thereafter, the family began using the Kenai property for recreational purposes.[5] While there, the family stayed in a camper/trailer which Duane had purchased approximately two months prior to the parties' marriage. The family also enjoyed the use of a boat and motor purchased by Duane after the couple's marriage.

During the marriage, the parties maintained the separate checking and savings accounts they had established prior to the marriage.[6] Their paychecks were directly deposited into their respective accounts. Debra made payments on her condominium and her automobile from her account, and Duane made his own house payments and the monthly payments on the Kenai lot from his account. The trailer, the boat and the motor were purchased by Duane using his separate funds. Both parties bought

---

**1.** Duane also had a second daughter, Mindy, from a previous marriage. She was not a part of the family's household.

**2.** During the marriage, Debra traded in her premarital automobile and purchased a new one. She made all of the payments on the new automobile out of her separate checking account.

**3.** Duane's retirement plan is 90% vested; Debra's is 50% vested.

**4.** Debra contended at trial that much of her leave time was expended either to take care of the children when they were sick, or to allow the family to enjoy three and four day weekends.

**5.** Debra testified that a substantial amount of the time spent at the lot was expended in clearing and improving the property, a process in which both Duane and Debra participated.

**6.** There is a dispute over the reason for such separate accounts. Debra testified that the funds were kept separate at Duane's request. Duane claims that there was no discussion about the matter one way or the other.

groceries and clothing for the family. The parties agree that Duane contributed approximately $47,500 to the mutual household expenditures during the course of the marriage, while Debra contributed approximately $20,000.

At trial, the parties stipulated to a number of facts, including the values and dispositions of some of the properties involved in this marriage. They agreed, for example, that the condominium that Debra brought into the marriage and the house that Duane brought into the marriage would be retained by the respective parties.[7] They also agreed that each would retain the automobile in his or her possession at the time of separation. Consequently, the only items in dispute at the time of trial were the Kenai property, the boat and motor, the trailer, and Duane's accumulated leave time and pension assets.

The case was heard before Judge Victor Carlson on October 29, 1986. Debra contended at trial that the Kenai property, though purchased with savings accumulated by Duane prior to the marriage, was marital property subject to division. She also contended that the trailer, although purchased prior to the marriage, was a precoverture asset subject to division under AS 25.24.160(a)(4).[8] Debra requested that the court award her one-half the value of the foregoing assets, as well as one-half the value of Duane's accumulated leave time and pension, and one-half the value of the boat and motor.[9] Duane argued that the couple had never "come together" as an "economic marriage" and, hence, he should be entitled to keep 100% of the disputed items, since they were acquired in his name and with his funds.

Judge Carlson agreed with Duane, awarding him 100% of all of the disputed items of property.[10] Debra appeals this disposition, contending that Judge Carlson both applied an improper legal standard, and reached an unjust result.

We have long recognized the trial court's broad discretion in determining a just disposition of property based upon the facts in the particular case before it, and we have repeatedly held that we will reverse the trial court's determination only where it is clearly unjust. *See, e.g., Morris v. Morris,* 724 P.2d 527, 529 (Alaska 1986); *Hunt v. Hunt,* 698 P.2d 1168, 1171 (Alaska 1985); *Vanover v. Vanover,* 496 P.2d 644, 645 (Alaska 1972). Nonetheless, we have established, through our numerous decisions in divorce cases, an accepted method of legal analysis to be followed in determining property dispositions under AS 25.24.-160(a)(4). The first step in this analysis is to determine the specific property available for distribution. *Wanberg v. Wanberg,* 664 P.2d 568, 570 (Alaska 1983). Such property includes all assets acquired by the parties during marriage, plus any premarital property which the "balancing of equities" suggests should be divided. *Id.* Second, the court must determine the value of all property available for distribution. *Id.* Finally, the court must determine the most equitable allocation of the property between the parties, beginning "with the presumption that the most equitable division of the property is an equal division." *Id.* at

---

7. The condominium has since been returned to the mortgagee pursuant to a deed in lieu of foreclosure.

8. AS 25.24.160(a)(4) provides:
In a judgment in an action for divorce or action declaring a marriage void or at any time after judgment, the court may provide
. . . .
(4) for the division between the parties of their property, whether joint or separate, acquired only during coverture, in the manner as may be just, and without regard to which of the parties is in fault; however, the court, in making the division, may invade the property of either spouse acquired before marriage when the balancing of the equities be-

tween the parties requires it; and to accomplish this end the judgment may require that one or both of the parties assign, deliver, or convey any of their real or personal property to the other party[.]

9. These latter items were undisputedly property "acquired only during coverture" under AS 25.-24.160(a)(4).

10. The written findings and the divorce decree itself were actually signed by Judge Peter Michalski. However, the written findings correspond closely to Judge Carlson's oral findings issued from the bench, and the parties do not contest the change of judges.

570, 574–75. The principal factors the trial court must consider in deciding what property division is equitable are

> the respective ages of the parties; their earning ability; the duration and conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances, including the time and manner of acquisition of the property in question, its value at the time and its income producing capacity if any.

*Merrill v. Merrill,* 368 P.2d 546, 547–48 n. 4 (Alaska 1962).

It is apparent, from an examination of the record in this case, that the court below did not strictly adhere to the *Wanberg/Merrill* analysis in reaching its decision. The court made no determination in its findings as to whether the Kenai property and the trailer were items subject to distribution under AS 25.24.160(a)(4), despite a dispute as to the legal status of these items. Moreover, the record makes no mention of the *Merrill* factors and gives no indication that the court began with the "equal division" presumption. Although it might be divined from the record that the court considered some of the *Merrill* factors, *e.g.,* the duration of the marriage, the conduct of parties during marriage, and the time and manner in which the property at issue was acquired, the court gave no discernible consideration to the ages of the parties, their earning capacity, their station in life, their circumstances and necessities, their health, or their financial condition.

Instead, the court took an alternative approach. Judge Carlson reasoned as follows:

> Concerning the division of property, *this is a marriage of an extremely short duration. It's possible to untangle these parties' financial activities and to trace their respective contributions.* I also take into account their expectations, and what reasonable people expect under this type of circumstance, and what the community expects. When people have been together a number of years, there's an expectation that essen-

tially what they have is theirs, but *when people are together a very short time, as these two people were, there's not that expectation,* nobody expects that, even though, of course, one's dreams and hopes are burst, *it's still economically not a unit and if tracing can be done, tracing should be done.*

(Emphasis added). Judge Carlson further noted that both parties had contributed monetarily to the marital estate, in the form of food, clothing and other household expenses, and that neither party had been forced to "scrimp and save to make sure that the marital unit survived while the other party was building his own assets." In light of the short duration of this marriage and the fact that these parties, by their conduct, had indicated that they were "economically not a unit," the court concluded that the best course was to "leave the parties as [it found] them. Mr. Rose tak[ing] his property [and] Mrs. Rose tak[ing] hers." We must decide whether such an alternative analysis was justified under the facts in the case at bar.

The approach employed by the trial court in this case closely parallels the rule announced by the Oregon Supreme Court in *In re Jenks,* 656 P.2d 286 (Or.1982). The court stated therein:

> If the marriage is terminated before the parties' financial affairs become commingled or committed to the needs of children to the point that the parties cannot readily be restored to their pre-marital situations, *then property division is a relatively simple task in the nature of a rescission.*

*Id.* at 290 (emphasis added). The *Jenks* court cited with approval an earlier Oregon Court of Appeals decision, *In re York,* 30 Or.App. 937, 569 P.2d 32 (1977), wherein the appeals court held:

> Where the marriage is of short duration and neither party has foregone employment opportunities, the amount of each party's contribution to assets acquired during the marriage is a more important factor in formulating an equitable property division than it would be after a long-term marriage where one

spouse relinquished employment to care for the family. While both parties should share in the increase in value of marital assets, *the general approach in dividing property after a short-term marriage is to place the parties as nearly as possible in the financial position they would have held if no marriage had taken place.*

*Id.* at 33 (emphasis added; citations omitted).

We are persuaded by the reasoning of these decisions. In the case at bar, the parties were married only eighteen months. During that period, they maintained completely separate economic identities, carrying on their individual fiscal affairs in the same manner as they had prior to their marriage. Neither party was forced to forego employment opportunities, and neither party withheld family contributions to the detriment of the other.[11] Finally, none of the items in dispute here appreciated in value during the course of the marriage.[12] We see no compelling reason why, under these circumstances, the trial court should have been bound to begin with an "equal division" presumption, or to engage in a painstaking analysis under the *Merrill* factors before concluding that assets Duane accrued or purchased with his separate, uncommingled funds were his to retain. We believe that the disposition arrived at by the trial court put the parties in, as nearly as possible, the financial position they would have occupied had no marriage taken place. Accordingly, we cannot say that the result reached was clearly unjust.

We conclude that, in marriages of short duration, where there has been no significant commingling of assets between the parties, the trial court may, without abusing its discretion, treat the property division as an action in the nature of rescission, aimed at placing the parties in, as closely as possible, the financial position

they would have occupied had no marriage taken place. Our reading of the record in the case at bar convinces us that the trial court recognized this principle and applied it appropriately. The judgment is therefore AFFIRMED.

COMPTON, Justice, dissenting.

The opinion of the court condones a new approach to be applied to divisions of property in marriages of short duration where there has been no significant commingling of assets. The court's holding rejects the equitable balancing established by our case law and substitutes a new, objective rule which treats property division as an action in the nature of rescission. This rule is both unnecessary and unworkable.

AS 25.24.160(a)(4) directs the trial court to divide the parties' property "in the manner as may be just." Since our decision in *Merrill* the "justness of the division of property" has been based upon a set of equitable considerations known now as the *Merrill* factors. *Merrill v. Merrill*, 368 P.2d 546, 547–48 n. 4 (Alaska 1961). *See also Vanover v. Vanover*, 496 P.2d 644 (Alaska 1972) (any other factors bearing on whether the equities dictate that the other spouse is entitled to share in the property may be considered). Thus, the new rule is unnecessary because our case law has already established "an accepted method of legal analysis to be followed under AS 25.-24.160(a)(4)." Opinion at 1124 (*referring to Merrill*, 367 P.2d 546 and *Wanberg v. Wanberg*, 664 P.2d 658 (Alaska 1983)).

Duration of the marriage is one of the *Merrill* factors, but we have never held that duration is a controlling factor. Indeed, we have required the application of the *Merrill* analysis in cases where the parties' marriage was of the same or even shorter duration than that of the Roses'.

---

**11.** In fact, it was undisputed that Duane's contribution to the mutual family expenses was over twice that contributed by Debra.

**12.** The Kenai property and the trailer actually depreciated in value during the course of the marriage, and the record gives no indication that the boat and motor underwent any appreci-

ation. Although it might be argued that the pension and leave time "increased in value," insomuch as they continued to accrue during the marriage, we believe that such assets are more accurately characterized in this context as simply another aspect of Duane's uncommingled earnings.

See, e.g., *Carlson v. Carlson*, 722 P.2d 222, 225 (Alaska 1986) (eighteen months); *Burcell v. Burcell*, 713 P.2d 802 (Alaska 1986) (eleven months).

Further, whether the assets have been commingled, although not an explicit *Merrill* factor, falls within the conduct and acquisition of property rubric. We have not held that the parties' conduct is a controlling factor. *See, e.g., Burgess v. Burgess*, 710 P.2d 417, 420 n. 4 (Alaska 1985) (a joint loan not required to show parties intended to treat property as a joint asset); *Wanberg v. Wanberg*, 664 P.2d 568, 572 (Alaska 1983) (fact that title taken solely in husband's name not controlling as to divisibility of property). Neither party suggests that the *Merrill/Wanberg* analysis should be overruled or would have provided an inequitable result in this case. To now decide that duration and commingling are the dispositive factors is inconsistent with our precedents.

The new rule is unworkable because it raises more questions than it answers. In future cases decided under this rule the trial court must determine how short is short, how commingled is commingled and how compelling are "compelling reasons" which mandate the *Merrill/Wanberg* analysis. In other words the court's opinion provides no guidelines as to when it is within the trial court's discretion to use the new rule. In all likelihood deciding whether to use the new rule will be determined by resorting back to the *Merrill* factors. Further confusion will result in trying to trace the parties assets and put them back into the financial position they would have occupied had no marriage taken place.

I believe the trial court applied an improper legal standard. I would remand this case for reconsideration in accordance with *Wanberg* and *Merrill*.

RABINOWITZ, J., joins.