Ralph Edward ZIMIN, Appellant/Cross–Appellee,

v.

Martha Lee ZIMIN, Appellee/Cross–Appellant.

Nos. S–4425, S–4443.

Supreme Court of Alaska.

July 31, 1992.

M. Ashley Dickerson, Dickerson & Gibbons, Inc., Anchorage, for appellant/cross-appellee.

Janet D. Platt, Law Offices of Janet D. Platt, Anchorage, for appellee/cross-appellant.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

In this divorce proceeding, Ralph Zimin challenges two aspects of the trial court's division of marital property. He first argues that equitable division is inappropriate in this case because the parties were only married for 32 months. Alternatively, he claims that the court erred in valuing the property available for distribution. He also appeals the court's custody and child support awards. Martha Zimin cross-appeals, arguing that the court erred in denying her request for attorney's fees and costs. We find no fault in the trial court's handling of all these issues and therefore affirm.

·I. *Facts and Proceedings*

Martha and Ralph were married in October 1986. Their daughter, Stacey Lee Zi-

min, was born October 3, 1987. The parties permanently separated almost three years later in June 1989, when Martha filed for divorce.

During the marriage, Ralph worked as a commercial fisherman in South Naknek. When he was not fishing, Ralph also worked for an oil service company on the North Slope. Martha worked as a telephone apprentice prior to the marriage. During the marriage, she was a homemaker and the primary caretaker of Stacey. After the parties separated, Martha returned to work as a telephone apprentice on a seasonal basis.

Both parties brought property into the marriage. Ralph's premarital property included a timeshare in Hawaii, a Gillnetter boat, and a 1984 truck. Martha entered the marriage with a house and a neighboring lot in Palmer and a 1980 Chevy Citation. All of this premarital property was burdened with outstanding debt which the parties made payments on during the marriage.

The parties also acquired property during the marriage, including a lot in South Naknek, two fishing skiffs, miscellaneous fishing equipment and a 1983 Ford LTD. They constructed a house on the South Naknek property. They also built a shed on Martha's Palmer property. The parties opened a number of bank accounts during the marriage, both joint and individual, and also maintained separate accounts which they had opened prior to the marriage.

A divorce trial was held before Judge Michalski. At trial, Ralph proposed that he and Martha simply retain the property in their possession, arguing that equitable division was inappropriate for a short marriage under this court's decision in *Rose v. Rose*, 755 P.2d 1121 (Alaska 1988). He therefore offered no evidence establishing the current value of any of the property.[1] Martha agreed that they should retain the property in their possession, but argued that the marital contributions to the property should be equitably divided. She explicitly argued that appraisals of many of the assets were not feasible in this case because of their remote location and therefore proposed that the value of the marital share of the parties' property be determined by calculating how much the outstanding debt on each item had been reduced during the marriage.

In addition to the property dispute, Ralph sought joint custody of Stacey. Martha opposed joint custody on the grounds that she and Ralph had a history of poor communication following the separation. The child custody investigator recommended giving Martha sole legal and physical custody of Stacey. The investigator testified that Martha and Ralph had significant problems discussing the child's welfare. He also concluded that joint custody would not be successful.

Finally, the parties disputed the proper income figure which should be used to calculate Ralph's child support. Martha argued that Ralph's adjusted income in 1990 was approximately $50,205. Ralph argued that $25,651 which he placed in a Capital Construction Fund (and later withdrew for the purpose of buying a boat engine) was properly deducted from his adjusted annual income.[2] He further maintained that his child support obligation should be based on

---

1. During trial, Ralph did attempt to present expert testimony as to the value of the Gillnetter boat, but the trial court refused to hear this testimony because Ralph had not complied with Martha's discovery requests for this information. A trial court has broad discretion to sanction a party who evades discovery. *See Bachner v. Pearson*, 479 P.2d 319 (Alaska 1970) (court has discretion to exclude evidence for failure to comply with discovery order).

2. The Merchant Marine Act of 1936 permits a taxpayer who owns an eligible vessel to set up a Capital Construction Fund by agreement with the Secretary of Transportation or the Secretary

of Commerce. *See* 46 U.S.C.App. § 1177 (1989). The fund is established for the construction or reconstruction of American vessels. *Id.* Taxable income is reduced by certain amounts deposited for the taxable year in such a fund. 26 U.S.C. § 7518(c)(1)(A) (1989). Withdrawals from the funds for construction or reconstruction of a vessel are not taxable, but the amount of such withdrawals reduces the basis of the vessels. 26 U.S.C. § 7518(f)(2)–(3) (1989). Other non qualifying withdrawals are taxable. *See generally* J *Fed. Tax Coordinator 2d* (Res.Inst. Am.) 30,091–94 (1991).

his average income over the past ten years (approximately $32,045) because, as a fisherman, his income fluctuates from year to year.

At the close of the trial, Judge Michalski awarded Martha sole legal and physical custody of Stacey. He granted Ralph visitation rights [3] and ordered him to pay child support based on an adjusted annual income of $50,205. He ruled that the $25,651 deposited in Ralph's Capital Contribution Fund should be included in Ralph's income for the purposes of determining child support.

Judge Michalski also adopted Martha's proposed property division. He found that the marital funds used to make payments on premarital property, the marital funds used to acquire new property during the marriage and the marital funds deposited in accounts during the marriage were all part of the marital estate and available for distribution. He valued the total marital estate at $99,887.78. He calculated this figure based solely on the amount of payments made during the marriage and did not attempt to place a present value on the assets themselves. Since the marital contribution to the property retained by Ralph gave him a greater share of the marital estate, Judge Michalski ordered Ralph to pay Martha $33,700.60 to effectuate a 50/50 division. Both parties were ordered to pay their own attorney's fees.

On February 5, 1991, Judge Michalski issued his written findings of fact and con-

clusions of law. Ralph appealed the court's decision on all issues. Martha cross-appealed the trial court's denial of her request for attorney's fees and costs.

## II. *Discussion*

### 1. *The Division of Property*

■ In general, trial courts are expected to use a three-step process when equitably dividing marital property. *Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983). First, the court determines what property is available for distribution. Second, the court values the property. Third, the court equitably divides the property. *Id.* However, we have recognized an alternative approach for marriages of short duration where there has been no significant commingling of assets. *Rose v. Rose*, 755 P.2d 1121 (Alaska 1988).[4]

■ Ralph argues that the trial court erred in failing to apply the *Rose* approach in this case. His position is without merit. Unlike the parties in *Rose*, Ralph and Martha significantly commingled their assets.[5] Furthermore, Martha stopped working as a telephone apprentice during the marriage to become a homemaker. It is clear that Ralph and Martha did not maintain "completely separate economic identities" during their 32 month marriage. *See Bell v. Bell*, 794 P.2d 97, 102 (Alaska 1990) (holding that the *Rose* approach is inappropriate where parties bought and improved property together and jointly made payments on

---

3. These rights are as follows: Ralph has visitation during alternate weekends, alternate major holidays, and two weeks of continuous visitation during the winter, spring and summer prior to the time Stacey is in school. Once Stacey starts school, Ralph may have six continuous weeks of visitation during the summer.

4. In *Rose*, the parties were married for eighteen months. During the marriage, they maintained separate savings and checking accounts. *Id.* at 1124. Both parties continued working and their pay checks were deposited directly to their respective accounts. Each party made payments on premarital property out of their own accounts. *Id.* The trial court found that the parties had not functioned economically as a unit and awarded each party the assets each had acquired with premarital funds as well as money earned during the marriage but kept in sepa-

rate bank accounts. *Id.* at 1123–24. On appeal, we observed:

> [I]n marriages of short duration, where there has been no significant commingling of assets between the parties, the trial court may, without abusing its discretion, treat the property division as an action in the nature of rescission, aimed at placing the parties in, as closely as possible, the financial position they would have occupied had no marriage taken place.

*Id.* at 1125.

5. Ralph and Martha maintained a number of joint accounts. They bought the South Naknek property together. Both parties contributed to improvements on the South Naknek and Palmer properties. Both parties made payments on premarital property from marital earnings.

premarital property). Therefore, the trial court properly made its property division under the three-step *Wanberg* analysis.

■■■ Ralph's second challenge is to the methodology the court adopted in determining the value of the marital estate.[6] In the absence of evidence establishing the current value of any of the assets, the court valued the marital portion of the various assets based on the debt payments made during the marriage. In doing so, the trial court recognized that this method did not take into account the post-marital appreciation or depreciation of the property.

We have previously disapproved of property divisions which fail to consider appreciation and depreciation. *See Bell v. Bell*, 794 P.2d 97 (Alaska 1990).[7] However, in this case, the parties failed to present any evidence of the present value of the disputed property, making such a determination impossible. It is the duty of the parties, not the court, to ensure that all necessary evidence is presented at trial. *Hartland v. Hartland*, 777 P.2d 636, 640 (Alaska 1989)

(reviewing courts cannot continue to reverse and remand dissolution cases where the parties had an adequate opportunity to introduce evidence but failed to do so). Furthermore, in this case, the court specifically found that current appraisals of much of this property would not be economically feasible because of its remote location. On this record, we conclude that the trial court did not abuse its discretion in valuing the marital estate as it did.

### 2. Child Support

■■ The trial court determined Ralph's child support obligation based on an adjusted gross income of $50,205. It based this figure in part on the nine month 1990 tax estimate prepared by Ralph's accountant. However, the court also included in this figure the $25,651 which Ralph had deposited in a Capital Construction Fund and deducted from his projected 1990 income.

We conclude that the trial court properly included the $25,651 as part of Ralph's

---

6. On appeal, Ralph does not specifically challenge the trial court's failure to classify each asset as either marital or separate property. The trial court's approach is unusual in that it did not identify whole assets as marital or separate property. Instead the court identified the "marital portion" of the various assets as being available for distribution.

Essentially, the trial court used a version of the "source of funds" approach adopted in a number of jurisdictions. *See Tibbetts v. Tibbetts*, 406 A.2d 70 (Me.1979); *Shank v. Shank*, 182 W.Va. 271, 387 S.E.2d 325 (1989). Under this approach, property is classified according to the classification of the funds used to purchase it: property acquired with separate funds is separate; property acquired with marital funds is marital. Property purchased on debt is classified according to the funds used to pay off the debt. Thus it is "acquired" over time. *See generally* Brett R. Turner, *Equitable Distribution of Property* § 5.07 (Supp.1991).

Although we do not adopt the source of funds rule *per se*, it is not inconsistent with our statutes and caselaw. AS 25.24.160(a)(4) places all property acquired during the marriage, whether joint or separate, before the court for purposes of division. This statute also authorizes invasion of premarital holdings "when the balancing of the equities between the parties requires it." *Id.* When one spouse has made pecuniary contributions to the separate property of the other spouse, all or some of that property may be equitably divided on divorce. *Vanover v. Van-*

*over*, 496 P.2d 644, 648 (Alaska 1972); *Brooks v. Brooks*, 733 P.2d 1044, 1053 (Alaska 1987).

Since it is clear that the trial court could have reached the same result under our rules of equitable division and it is also clear that the court deviated from the traditional analysis because the parties failed to present any evidence establishing the current value of the property, we do not believe that the trial court's analysis constitutes an abuse of discretion.

7. In *Bell*, the trial court applied the *Rose* approach and permitted each party to retain the assets in his or her possession. However, the court ordered the husband to reimburse the wife for contributions made by the wife for property retained by the husband. We reversed, holding that the lower court had erred in applying the *Rose* approach because the parties had significantly commingled their assets and instructed the trial court to divide the property under *Wanberg* on remand. We also held that reimbursement was inappropriate when it failed to account for appreciation and depreciation, noting:

We also doubt the propriety of using a reimbursement remedy where the value of the assets to which there has been mutual contribution by the parties greatly depreciate or appreciate in value. To do so may result in one party bearing the entire loss (should there be depreciation) or enjoying the entire gain (should there be appreciation).

*Id.* at 102 (citation omitted).

1990 income for the purpose of calculating his support obligation.[8] The commentary to Civil Rule 90.3 states that certain amounts the IRS permits a taxpayer to deduct from income (such as the accelerated component of depreciation expenses, depreciation of real estate, investment tax credits, or any other business expenses determined by the court to be inappropriate) should not be deducted from the obligor's income when calculating child support. Alaska R.Civ.P. 90.3, Commentary III(B). Since the goal of the Rule 90.3 guidelines is to obtain a realistic estimate of an obligor's adjusted annual income, these funds should be included in Ralph's 1990 income for the purposes of calculating child support. To hold otherwise would severely understate Ralph's most current income figures.

 Ralph also argues that the trial court should have based its calculation on his average income over the past ten years because, as a fisherman, his income fluctuates from year to year. The commentary to Rule 90.3 states that in cases where an obligor's income is erratic, the trial court may choose to average the obligor's income over a number of years. Alaska R.Civ.P. 90.3, Commentary III(E). We recognize that it is difficult to apply the Rule 90.3 guidelines to an obligor parent who works in a seasonal business. Nevertheless, although income averaging is clearly appropriate in such cases, a ten-year average is generally not a reliable indicator of an obligor parent's current earning capacity.[9] We therefore conclude that the trial court did not err in rejecting Ralph's proposed ten-year average and basing its support award on his 1990 projected earnings. If Ralph is unable to meet his support obligation in the future, he may move to modi-

fy the award. *See Kowalski v. Kowalski*, 806 P.2d 1368, 1372 (Alaska 1991).

### 3. *Custody*

 The trial court awarded Martha sole legal and physical custody of Stacey. On appeal, Ralph argues that the trial court abused its discretion in failing to award joint custody.[10]

We have previously held that cooperation between parents is essential if joint custody is to be in the child's best interests. *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1189 (Alaska 1987). In this case, there is ample evidence in the record supporting the trial court's finding that the parties could not communicate sufficiently to make a joint custody arrangement work. We conclude that the trial court did not abuse its discretion in awarding sole custody to Martha.

 In the alternative, Ralph argues that the court erred in not allowing him to keep Stacey during the day when Martha is working.[11] In *Lone Wolf*, 741 P.2d at 1190–91, we held that, in the absence of specific findings indicating that more liberal visitation was inappropriate, it was an abuse of discretion to limit an unemployed father to weekend visitation when the mother worked a seven day work schedule during which time she rarely saw the children. We observed that "[t]he cooperation necessary to allow more liberal visitation is far less than that needed for joint custody." *Id.* at 1191. However, in this case, the trial court specifically found that the parties' inability to communicate would make even the level of visitation ordered by the court a challenge.

---

8. Child support determinations are within the broad discretion of the trial court and will only be reversed when we are left with a definite and firm conviction that a mistake has been made. *Pattee v. Pattee*, 744 P.2d 658, 662 (Alaska 1987); *Richmond v. Richmond*, 779 P.2d 1211, 1216 (Alaska 1989).

9. Ralph rejected Martha's offer to average his income over a three-year period. However, we believe that a three-year average would provide an accurate estimate of a parent's current earn-

ing capacity when a parent's income is subject to yearly fluctuations.

10. The trial court is vested with broad discretion in child custody decisions. *Gratrix v. Gratrix*, 652 P.2d 76, 79 (Alaska 1982). Such decisions will only be reversed for abuse of discretion or erroneous factual findings. *Id.* at 79–80.

11. We review visitation awards under the same standard applied in other custody matters. *Lone Wolf*, 741 P.2d at 1190.

We conclude that the trial court did not abuse its discretion either in awarding sole custody to Martha or in failing to award Ralph greater visitation than it did.

### 4. *Attorney's Fees and Costs*

■ The trial court's discretion in awarding attorney's fees is broad and its decision will not be disturbed on appeal unless it is "arbitrary, capricious, manifestly unreasonable, or stems from an improper motive." *Tobeluk v. Lind,* 589 P.2d 873, 878 (Alaska 1979); *Rostel v. Rostel,* 622 P.2d 429, 432 (Alaska 1981).

■ On cross-appeal, Martha contends that the trial court erred in denying her request for attorney's fees because her earning capacity is significantly lower than Ralph's. On the record presented, Ralph does appear to have a greater earning capacity than Martha.[12] However, in deciding whether a fee award is appropriate, the court must also consider the parties' relative economic situations as well as their earning capacity. *See Rhodes v. Rhodes,* 754 P.2d 1333, 1336 (Alaska 1988). As a result of the divorce, Ralph must pay Martha approximately $33,000. This award is substantial when compared to Ralph's annual income. In light of this, we conclude that the court's denial of fees and costs did not constitute an abuse of discretion.[13]

AFFIRMED.

---

**12.** The court determined that Ralph had an annual adjusted income of $50,205 in 1990. Although the court did not make specific findings concerning Martha's earning capacity, she apparently earned approximately $30,000 in 1990 working as a telephone apprentice.

**13.** Martha also argues that her fees were unreasonably increased by Ralph's vexatious and bad faith conduct. In *Kowalski v. Kowalski,* 806 P.2d 1368 (Alaska 1991), we observed that

"[c]onduct justifying [an increased fee award for bad faith or vexatious conduct] must be such that the parties are prevented from litigating the action on an equal plane." *Id.* at 1373. Although the record does indicate that Ralph repeatedly failed to provide Martha with basic financial information during discovery, his conduct was not so egregious that the trial court's denial of fees was manifestly unreasonable.