**Edward Aaron McCOY, Appellant,**

v.

**Betty Cole McCOY, Appellee.**

No. S–6545.

Supreme Court of Alaska.

Nov. 15, 1996.

Edward A. McCoy, Kasilof, pro se.

Peter F. Mysing, Kenai, for Appellee.

Before COMPTON, C.J., and
RABINOWITZ, MATTHEWS,
EASTAUGH, and FABE, JJ.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

Edward McCoy appeals from the superior court's property division in the divorce proceedings between himself and Betty McCoy. He argues that the superior court should have applied the rescission remedy of *Rose v. Rose*, 755 P.2d 1121 (Alaska 1988), and that the court erred in dividing the property inequitably and in refusing to invade Betty's premarital property. We affirm.

### II. FACTS AND PROCEEDINGS

Edward and Betty McCoy were married on May 9, 1992. The superior court found that the coverture of the marriage ended on March 19, 1993, when Edward and Betty separated their finances.

Edward entered the marriage owning four parcels of land in Sterling ("Sterling proper-

ty"). He also owned a nonfunctioning school bus, several other vehicles, and miscellaneous household effects.

Betty entered the marriage owning a house on five acres of land in Kasilof ("Kasilof property"). Although there was no debt associated with the house, Betty owed about $10,000 on a mortgage on the underlying land. She also had approximately $15,000 in savings, and owned a truck.

The case went to trial in October 1993. Edward was then fifty-six years of age. He was unemployed, and received a total monthly income of $690, including $528 in Social Security disability benefits and $162 in Veteran's benefits.

Betty was fifty-five years of age. Throughout the marriage she worked as a dietary aide at the Soldotna hospital. Her annual salary was $15,000, with a net monthly pay of approximately $960.

Shortly after Betty and Edward married, Edward received a check for retroactive Social Security disability benefits in the amount of $19,800, about $12,000 of which Betty deposited in her checking account. Though apparently reluctant to do so, Betty then wrote a check for about $10,800 to pay off the mortgage on the Kasilof property. Although Betty agreed to put Edward's name on the title to the house and Edward agreed to put Betty's name on the title to the Sterling property, they never did so because, according to Betty, "summer rolled around ... and it's just one of those things we never got to do."

The superior court found that the parties had each contributed about $30,000 to the marital relationship, all of which was spent during the course of the marriage. The court treated only wedding gifts and a pop-up camper purchased during the marriage as the remaining marital assets. Although the court found that "some equity increase in [Betty's] house" was a marital asset, it declined to include this increase as property available for distribution. The court found that it was irrelevant that the mortgage was actually paid out of Edward's Social Security disability check, because that same amount would have been spent on marital expenses if the mortgage had been paid out of Betty's $15,000 in savings.

After determining the marital assets available for division, the superior court applied the factors set out in *Merrill v. Merrill*, 368 P.2d 546 (Alaska 1962), in arriving at an equitable division of property. The superior court found that the parties were "of approximately equal age and similar earning capacities"; that they were "in approximately equal stations in life and that their health and physical condition is approximately equal"; and that "the parties' circumstances and needs [were] about the same." The court also found that neither party's conduct was particularly egregious with respect to the assets. The court concluded that an equal property division of the remaining marital assets was equitable. Edward appeals.

## III. DISCUSSION

### A. Should the Superior Court Have Applied the Rose Rescission Remedy?

"The trial court has broad discretion in fashioning a property division in a divorce action." *Cox v. Cox*, 882 P.2d 909, 913 (Alaska 1994). We have held that "in marriages of short duration, where there has been no significant commingling of assets between the parties, the trial court may, without abusing its discretion, treat the property division as an action in the nature of rescission." *Rose v. Rose*, 755 P.2d 1121, 1125 (Alaska 1988).

The decision to apply *Rose* when there is no significant commingling of assets is a matter of discretion. Therefore, we review this decision only for an abuse of discretion. Similarly, with regard to the "source of funds" method of property distribution, we have held that "[i]t is one thing to hold that use of the source of funds rule in limited circumstances is not an abuse of discretion; it would be quite a leap ... to hold that it must be applied in a given set of circumstances as a matter of law." *Cox*, 882 P.2d at 915.

However, when the superior court does apply the *Rose* method, "[t]here is a separate question to be asked by this court on review, ... and that is whether the trial

court applied the correct legal standard in the exercise of its broad discretion. With respect to legal analysis employed at the trial court level, review is based upon our independent judgment." *Wanberg v. Wanberg,* 664 P.2d 568, 570 (Alaska 1983). Consequently, when the *Rose* rescission remedy is applied, we will review that application under our independent judgment. *Bell v. Bell,* 794 P.2d 97, 102 n. 10 (Alaska 1990) (holding that "[s]ince the question whether the trial court employed the correct legal analysis [in applying the *Rose* rescission remedy] is a question of law, review of [the] claim [that this application was incorrect] is based upon our independent judgment.").

█ The superior court's finding that the parties commingled their assets over the course of the marriage is a finding of fact which will only be reversed if it is clearly erroneous. *See, e.g., McDaniel v. McDaniel,* 829 P.2d 303, 305 (Alaska 1992).

█ Edward argues that the superior court erred in declining to treat the case as one calling for a remedy restoring the parties to the positions they would have been in had the marriage not occurred. In a marriage of short duration where there has been no significant commingling of assets, Alaska law provides for "treat[ing] the property division as an action in the nature of a rescission, aimed at placing the parties in, as closely as possible, the financial position they would have occupied had no marriage taken place." *Rose,* 755 P.2d at 1125.

In this case, the superior court found the *Rose* remedy to be inappropriate because it found that "the parties commingled all their assets over the course of the marriage." Both parties deposited money in Betty's checking and savings accounts, and it appears that all marital expenses, as well as expenses relating to premarital assets, were paid out of these commingled funds. Because the court did not clearly err in finding that the parties significantly commingled their assets during their marriage, the superior court did not err in declining to apply the *Rose* rescission remedy. *See Zimin v. Zimin,* 837 P.2d 118, 121 (Alaska 1992) (holding that it was not error for the superior court to decline to apply the *Rose* approach

when the parties did not "maintain completely separate economic identities" during their marriage).

**B.** *Did the Superior Court Abuse Its Discretion in Declining to Invade the Premarital Property?*

█ The superior court has broad latitude in fashioning an equitable distribution within the perimeters of AS 25.24.160(a). The superior court's distribution will not be disturbed unless it is so clearly unjust as to constitute an abuse of discretion. *E.g., Wanberg v. Wanberg,* 664 P.2d 568, 570 (Alaska 1983). The superior court's accompanying factual determinations will not be reversed except upon a finding of clear error. *McDaniel,* 829 P.2d at 305.

█ We have enumerated several factors, known as the *Merrill* factors, which the superior court weighs in reaching an equitable property division:

(1) the ages of the parties;

(2) their earning capacity;

(3) the duration of the marriage;

(4) the conduct of the parties during marriage;

(5) the parties' "station in life";

(6) the circumstances and necessities of each;

(7) their health;

(8) their financial condition;

(9) the time and manner of acquisition of the property in question;

(10) the value of the property at the time of division; and

(11) the income-producing capacity of the property.

*Laing v. Laing,* 741 P.2d 649, 652 (Alaska 1987) (citing *Merrill v. Merrill,* 368 P.2d 546, 547 n. 4 (Alaska 1962); *Brooks v. Brooks,* 677 P.2d 1230, 1233 (Alaska 1984)). This list is not exhaustive; the superior court may consider any other factors it deems relevant to dividing the property. *Laing,* 741 P.2d at 652 (citing *Brooks,* 677 P.2d at 1233). Furthermore, while the court need not make findings on all of the *Merrill* factors, its findings must provide a sufficient basis for

the conclusion reached. *Id.* (citing *Burcell v. Burcell,* 713 P.2d 802, 805 (Alaska 1986); *Brooks,* 677 P.2d at 1233).

Edward argues that the superior court abused its discretion in reaching an equitable property division because (1) it based its property division on incorrect *Merrill* factor findings, and (2) it declined to invade the Kasilof property.

### 1. *The superior court's Merrill factor findings*

◼ The superior court made findings on a number of *Merrill* factors in determining that an equal division of marital assets was equitable and in refusing to invade the Kasilof property. It found that the parties had similar earning capacities and were of approximately equal health and physical condition. Edward argues that these findings are clearly erroneous.

At the time of trial Edward was unemployed and received a total monthly income of $690 from Social Security and Veteran's disability benefits. Betty was then earning a net monthly income of approximately $960 as a dietary aide. The superior court found that there was no significant difference in the parties' incomes or earning capacities.

Although there was a disparity in their actual incomes, the superior court did not clearly err in finding that the parties' incomes and earning capacities were similar. The superior court permissibly found that Edward could work and earn income. Although Edward claims to be totally disabled for purposes of Social Security benefits, and to be disabled by a hemorrhoid condition, twenty percent of which was deemed service-related by the Veteran's Administration, Edward himself admitted that he was capable of "building a deck at the rear of the house, putting in and harvesting a garden, subsistence fishing [and] canning, cutting down, limbing and stacking 8–10 cords or more of logs...." Furthermore, Edward claimed to

be operating a "strategic materials" business. Based on these facts, we hold that the superior court's finding that the parties have similar earning capacities is well-supported by the record, and is therefore not clearly erroneous.

◼ Similarly, the superior court's findings regarding the relative health of the parties are not clearly erroneous. A Social Security disability rating is not dispositive of a superior court's determination of either a party's earning capacity or health. Because the superior court's findings regarding the relative health of the parties are supported by the record, we hold that they are not clearly erroneous.

Because the record supported the superior court's *Merrill* factor findings, and because these findings provide a sufficient basis for the conclusion reached, we affirm the court's property division.

### 2. *Refusal to invade the Kasilof property*

◼ Edward further argues that the superior court abused its discretion by refusing to invade Betty's separate premarital property in light of Edward's monetary and nonpecuniary contributions to that property.[1]

◼ When a spouse's contributions to the marital community benefit the other spouse's premarital property, even if the parties did not intend joint ownership of the premarital property, the court may invade the separate property when equitably necessary to compensate the contributing party. *Burgess v. Burgess,* 710 P.2d 417, 420 n. 3 (Alaska 1985). The superior court should consider a spouse's pecuniary as well as nonpecuniary contributions which benefit premarital property in determining whether separate property should be divided. *Vanover v. Vanover,* 496 P.2d 644, 648 (Alaska 1972) (holding that when the contributions of a pecuniary or "more intangible nature" have benefited "in any manner" the premarital property of the other spouse, the superior

---

1. The superior court classified the Kasilof property as premarital property. Although Edward does not address this characterization in his argument, Betty asserts that Edward "takes issue with Judge Link's classification of [her] home as her separate pre-marital property," and develops counter arguments in her brief. However, since Edward does not argue that the Kasilof property should be treated as marital property, we assume for purposes of this opinion that it is premarital property.

court may distribute the premarital property); *Bussell v. Bussell*, 623 P.2d 1221, 1223–24 (Alaska 1981) (holding that a "primarily domestic" role should be recognized as a valuable contribution to the marital enterprise).

In addition to contributing to the marital community his $19,800 retroactive disability benefits check, $10,800 of which was used to pay off the mortgage on the Kasilof property, Edward claims to have cooked, cleaned, laundered, and performed other domestic chores an average of four hours each day. He also claims that he caught and canned fish for the household, and cut down, limbed, and stacked over ten cords of logs. Finally, Edward claims that he improved the Kasilof property by putting in a flower box and a deck in the back of the house with materials he provided. He estimates that it would have taken a normal person eight hours to put in these two items, and claims that the deck increased the value of the property by $500.

The superior court treated the money from Edward's check for retroactive Social Security disability benefits as a contribution to the marital community. The court explained that this money was no more classifiable as Edward's "separate" money than the $15,000 in savings that Betty contributed to the marital community.

The court also implicitly found that Edward and Betty shared domestic responsibilities, and that Edward was not entitled to compensation for his share of the domestic work. The court stated that the domestic responsibilities were "not things that under the circumstances of this particular divorce ... are items properly claimed as damages." Therefore, there was no need to invade the premarital property in order to equitably compensate Edward for any nonpecuniary services which benefited that property. The court did not make any findings with regard to the improvements Edward claimed to have made to the Kasilof property.[2]

2. It appears that the court treated this as part of Edward's domestic services claim. We find this approach reasonable under the circumstances of this case. However, we note that even if the superior court should have treated Edward's al-

Based on these findings, we hold that the superior court did not abuse its discretion in refusing to invade the Kasilof property.

## IV. CONCLUSION

We AFFIRM the superior court's decision not to apply the *Rose* rescission remedy and the superior court's property division in all other respects.

leged improvements as a distinct contribution to the Kasilof property, it would not have to invade that property to achieve an equitable property division.