*Notice:  This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

AARON PFEIL,                              )
                                          )   Supreme Court No. S-14798
                    Appellant,            )
                                          )   Superior Court No. 3AN-11-08760 CI
          v.                              )
                                          )   O P I N I O N
CHACHEE LOCK,                             )
f/k/a CHACHEE PFEIL,                      )   No. 6836 - October 25, 2013
                                          )
                    Appellee.             )
                                          )
_____)

> Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.
>
> Appearances:  Jürgen Jensen, The Law Office of Jürgen Jensen, Anchorage, for Appellant.  Mario Lincoln Bird, Anchorage,  for Appellee.
>
> Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.
>
> WINFREE, Justice.

## I.      INTRODUCTION

A couple initiated divorce proceedings after two years of marriage.  Noting the marriage's short duration, the wife requested that the superior court "return the parties as much as possible into their pre-marital financial status" and sought a property

division under *Rose v. Rose*.[1]  The husband requested that the superior court "equitably divide all marital property."[2]

After a one-day trial the superior court granted a divorce decree and divided marital property based on a determination that the "parties are asking the court to apply a modified version of *Rose*."  The superior court divided all of the property, based partly on *Rose* and partly on equitable division.  The husband moved for reconsideration, arguing that the superior court had ignored his request for equitable distribution of all marital property and that the resulting distribution was inequitable.  The superior court denied the reconsideration motion without explanation.  The husband appeals.

Because the superior court's decision was (1) based on the faulty premise that both parties agreed to a *Rose* property division and (2) not otherwise supported by necessary factual findings, we reverse and remand for a new property division.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Aaron Pfeil and Chachee Lock began dating in 2005 or 2006, became

---

[1]      755 P.2d 1121, 1125 (Alaska 1988), holding that:

> [I]n marriages of short duration, where there has been no significant commingling of assets between the parties, the trial court may, without abusing its discretion, treat the property division as an action in the nature of rescission, aimed at placing the parties in, as closely as possible, the financial position they would have occupied had no marriage taken place.

[2]      *See Wanberg v. Wanberg*, 664 P.2d 568, 570 (Alaska 1983) ("Equitable division of marital assets by the superior court involves a three-step procedure.  First, the trial court must determine what specific property is available for distribution.  Second, the court must find the value of this property.  Third, it must decide how an allocation can be made most equitably.").

cohabitants sometime between December 2007 and March 2008, and married in June 2009. The parties' primary disputed assets, which essentially are the sole focus of this appeal, are two houses, a vehicle, and a four-wheeler.[3]

### 1. Real property

In December 2007 Chachee purchased a home on East 65th Avenue in Anchorage (E. 65th home). The parties dispute exactly when Aaron moved into that home, but agree they were cohabitants from at least March 2008 until December 2010, when Aaron purchased a home on Langnes Court in Anchorage (Langnes home). The parties then used the Langnes home as their marital residence and the E. 65th home as a rental property.

While they shared the E. 65th home — both before and after marriage — Aaron and Chachee each deposited around $1,200 monthly into a joint account. This money was used to pay the mortgage and other household bills. Both also contributed to home improvements. After moving into the Langnes home they rented out the E. 65th home, but the rental income was insufficient to cover all of that home's expenses. During this period Aaron paid the Langnes home mortgage and Chachee paid any E. 65th home expenses exceeding the rental income. Chachee also paid for some improvements to the Langnes home.

At the time of trial the Langnes home was worth $335,000 and the E. 65th home was worth $236,500. The Langnes home mortgage was $355,864, and the E. 65th home mortgage was $225,055. Thus the Langnes home had about $20,000 negative equity, but the E. 65th home had about $11,000 positive equity.

---

[3]    The parties had many other items of personal property, including disputed firearms, tax debt, a vehicle trailer, and numerous miscellaneous items. Aaron did not challenge the superior court's determinations of separate versus marital property for those items or their valuation and division.

### 2. Vehicles

In September 2008, during cohabitation but before marriage, Chachee purchased a Chevrolet Silverado Duramax pickup truck (the Duramax). At the time of divorce both parties were listed on the Duramax registration. Both parties drove the Duramax during cohabitation and marriage. Chachee made all of the payments on the Duramax, and the vehicle loan was in her name. At the time of trial the Duramax was worth $16,572 with slightly over $11,000 debt.

In June 2010 Chachee gave Aaron $7,000 to purchase a Yamaha Grizzly four-wheeler (the Grizzly). Aaron subsequently reimbursed Chachee $3,500. At the time of trial the Grizzly was worth $2,180.

### B. Proceedings

Chachee filed for divorce in June 2011, attaching a property and debt worksheet. Aaron answered, partly denying Chachee's property and debt assertions and requesting "an equitable division of property."

In her trial brief Chachee stated that "[t]he parties have agreed that each will keep their separate residences . . . and the loans thereon" but that "the division of personal property is still in dispute." Chachee requested the Duramax and that either Aaron pay her $3,500 or the court award her the Grizzly. She also requested other personal property items and reimbursement for expenditures she made on improvements for the Langnes home. She asserted that "Aaron may claim that there should be some payment from Chachee towards equalizing the division of assets. This is a marriage of short duration and pursuant to *Rose v. Rose* . . . the court should attempt to return the parties as much as possible into their pre-marriage financial status."

In his trial brief Aaron requested an equal division of the marital property. Aaron asserted that the E. 65th home and the Duramax were transmuted marital properties. He suggested that each party retain the home they were then living in (Aaron

the Langnes home and Chachee the E. 65th home), that each party be liable for the debt on any property they retain (including the homes), and that he receive the Duramax and Grizzly. He concluded with a request that the court "include the real property and property acquired during cohabitation and equitably divide all the disputed property," and "that Chachee pay a $13,089.42 equalizing payment to balance the marital estate."

Trial took place in April 2012. The superior court issued its findings of fact and conclusions of law in May. In its discussion of property valuation and division the court first introduced the "*Wanberg* rules,"[4] and then, citing *Rose*, explained that "[t]he *Wanberg* rules do not apply in a marriage of short duration where the parties have not significantly commingled assets and can be put in the position that they were at the time the marriage commenced."[5] The court stated:

> In this case, without necessarily articulating their position both parties are asking the court to apply a modified version of *Rose*. In other words, the parties are asking the court to identify many assets as pre-marital and award the asset and any related debt to the party who acquired the property before marriage. The parties are effectively asking the court to apply [the] *Wanberg* rules with regard to disputed items of property. The court will adopt the methodology requested by the parties and will make valuation and distribution determinations for contested items.

The superior court awarded Aaron and Chachee their respective bank account balances, retirement accounts, and credit card debts. The court awarded Chachee the E. 65th home and debt and awarded Aaron the Langnes home and debt, explaining that it was awarding "the real property and the debt thereon in the fashion

---

[4]     *See Wanberg*, 664 P.2d at 570 (describing three-step equitable division process).

[5]     *See Rose*, 755 P.2d at 1125.

requested by the parties." The court awarded Chachee the Duramax "because she purchased the vehicle before the marriage." The court awarded Chachee the Grizzly, finding that Aaron paid Chachee half the money she lent him for the Grizzly, but "he was a primary user of the vehicle and essentially used up the value of his investment."

After distributing the rest of the marital property — property not disputed on appeal — the court concluded that the "distribution represents an approximately equal distribution of the value of the parties' marital personal property" and explained that "[f]or the non-*Rose* distribution of part of the marital [property], this court starts out with the presumption that an equal division of property is most equitable. . . . In this case, an approximate 50/50 split of the marital assets and debt to be divided is fair and equitable."[6]

Aaron moved for reconsideration, arguing that the superior court had ignored his request that "all property, real and personal, acquired during cohabitation and marriage be equally divided between the parties." He argued that the court: (1) failed to realize that items purchased during cohabitation were marital property; (2) overlooked his request that "the equity in the parties' real property be allocated between the parties"; and (3) distributed the marital estate inequitably. Aaron stated that "Chachee was awarded the majority of the items that retained any value. Aaron on the other hand, was

---

[6]     The superior court did not value all of the property it divided. The court explained:

> The parties have listed values for the personal items set forth . . . based on their opinions of value. Suffice it to say that these valuations are guesses at best. The court concludes that the overall value of the marital personal property items awarded to each party is approximately equal and no additional allocation of marital assets and no additional equalization payment need be made . . . .

awarded a home that is underwater $20,000, a debt to Chachee of $2,095.14, and was not awarded any of the vehicles that were purchased during their cohabitation." The superior court denied Aaron's motion for reconsideration without explanation.

## III. DISCUSSION

### A. Marital Property Distribution: *Wanberg* And *Rose*

Marital property generally is divided under an equitable distribution framework.[7] Under *Wanberg* equitable division of marital assets involves three steps: (1) determining the specific property available for distribution; (2) valuing the available property; and (3) equitably dividing property available for distribution.[8] "An equal division of marital property is presumptively just."[9]

"Marital property includes all property acquired during the marriage, 'excepting only inherited property and property acquired with separate property which is kept as separate property.' "[10] Property acquired during premarital cohabitation may be considered marital.[11] Premarital separate property may become marital through

---

[7]    *See Beals v. Beals*, 303 P.3d 453, 458-61 (Alaska 2013) (explaining equitable distribution framework before determining *Rose* rescission not appropriate); *Wanberg*, 664 P.2d at 570.

[8]    *Wanberg*, 664 P.2d at 570.

[9]    *Berry v. Berry*, 978 P.2d 93, 96 (Alaska 1999) (citing *Brown v. Brown*, 914 P.2d 206, 209 (Alaska 1996); *Wanberg*, 664 P.2d at 574-75).

[10]    *Schmitz v. Schmitz*, 88 P.3d 1116, 1125 (Alaska 2004) (quoting *Lewis v. Lewis*, 785 P.2d 550, 558 (Alaska 1990)).

[11]    *McLaren v. McLaren*, 268 P.3d 323, 332 (Alaska 2012) ("The general rule is that courts divide property acquired only during marriage. But so long as the parties do marry, the trial court is free to consider the parties' entire relationship, including any period(s) of premarital cohabitation, in making its property division . . . ." (internal
(continued...)

transmutation, "the process by which one spouse's separate property becomes marital property, [which] 'occurs when a married couple demonstrates an intent, by virtue of their words and actions during marriage, to treat one spouse's separate property as marital property.' "[12]

A court may order an unequal property division after considering the factors enumerated in AS 25.24.160(a)(4), as long as the division is "just" and "fair."[13] A court is not limited to the statutory factors and "may consider 'any other factors it deems relevant' to dividing the property."[14] Factual findings supporting marital property distribution "must be sufficient to indicate a factual basis for the conclusion reached."[15]

We have concluded that:

> for marriages of short duration in which assets have not been commingled, "the trial court may, without abusing its discretion, treat the property division as an action in the nature of rescission, aimed at placing the parties in, as closely as possible, the financial position they would have occupied had no marriage taken place."[16]

---

[11]    (...continued)
quotation marks and footnotes omitted)).

[12]    *Abood v. Abood*, 119 P.3d 980, 984 (Alaska 2005) (quoting *Schmitz*, 88 P.3d at 1125).

[13]    *Cartee v. Cartee*, 239 P.3d 707, 712 (Alaska 2010).

[14]    *Id.* at 713 (quoting *McCoy v. McCoy*, 926 P.2d 460, 463 (Alaska 1996)).

[15]    *Id.* (citing *Nicholson v. Wolfe*, 974 P.2d 417, 422 (Alaska 1999)).

[16]    *Dunn v. Dunn*, 952 P.2d 268, 273 (Alaska 1998) (quoting *Rose v. Rose*, 755 P.2d 1121, 1125 (Alaska 1988)).

But we have "refused to apply *Rose* when the parties have commingled assets."[17]

We have affirmed a superior court's application of *Rose* even when one marital asset was divided equitably,[18] but in an unpublished decision we cautioned that "[e]quitably dividing one of a couple's assets makes sense; applying *Rose*'s rescission theory to one asset does not. The parties have either maintained largely separate economic identities, in which case application of *Rose* is permissible, or they have not."[19]

## B.    Standard of Review

When a superior court applies *Rose* rescission "we will review that application under our independent judgment."[20]

## C.    Why We Remand For A New Property Division

The superior court's findings of fact and conclusions of law stated: (1) "both parties are asking the court to apply a modified version of *Rose*"; and (2) "[n]either party proposes that the other party be allocated any of the equity, whether positive or negative, in the real property that the other party receives." But Aaron specifically requested an equitable distribution of marital property in his answer to

---

[17]    *Id.* (citing *Cox v. Cox*, 882 P.2d 909, 914 (Alaska 1994); *Bell v. Bell*, 794 P.2d 97, 102 (Alaska 1990)); *see, e.g.*, *McCoy*, 926 P.2d at 463 (affirming trial court's finding of significant commingling as not clearly erroneous); *Cox*, 882 P.2d at 914 (concluding sufficient evidence supported trial court's finding of commingling and determination that *Rose* was inapplicable); *Bell*, 794 P.2d at 102-03 (concluding commingling was "hardly insignificant" and reversing trial court's application of *Rose*).

[18]    *See Dunn*, 952 P.2d at 273-74 (explaining circumstances allowed for a *Rose* rescission and also holding superior court did not abuse its discretion when treating van as a marital asset).

[19]    *Morrissette v. Kim*, Mem. Op. & J. No. 1267, 2006 WL 3334056, at *2 n.12 (Alaska, Nov. 15, 2006).

[20]    *McCoy* 926 P.2d at 463 (citing *Bell*, 794 P.2d at 102 n.10).

Chachee's divorce complaint. In his trial brief Aaron "respectfully request[ed] that [the] court include the real property and property acquired during cohabitation and equitably divide all the disputed property." His argument that the E. 65th home and the Duramax were transmuted to marital property makes sense only if Aaron were asserting a claim to the equity in the property. And although Aaron's property spreadsheet suggested awarding himself the Langnes home and debt and awarding Chachee the E. 65th home and debt, Aaron requested an equalization payment to balance the property division.

Aaron's theories and questions at trial provide further support for his assertion that he requested an equitable division of marital property. Aaron's lawyer questioned Chachee on whether she alone should receive the equity in the E. 65th home, Aaron testified that he was entitled to equity in the E. 65th home, and in closing arguments Aaron's lawyer described the homes and their associated equity and debts as "[t]he big things in this [case]." Finally, Aaron's motion for reconsideration — denied by the superior court without explanation — argued that the court had overlooked Aaron's request that "all property, real and personal, acquired during cohabitation and marriage be equally divided between the parties."

Chachee argues that even if Aaron had not consented to a *Rose* property division, the superior court found her arguments more compelling and thus applied *Rose*. But this argument ignores the court's statements that the parties requested *Rose* and that neither party requested "that the other party be allocated any of the equity, whether positive or negative, in the real property that the other party receives," as well as the fact that the court made no explicit findings to support its *Rose* application. Without findings "sufficient to indicate a factual basis for the conclusion reached," it is impossible to

evaluate whether the court properly applied *Rose*.[21]

The superior court's decision to apply "a modified version of *Rose*," applying rescission principles to some property and then dividing other property equitably under *Wanberg*, may be problematic as well. In *Dunn v. Dunn* we affirmed a superior court decision applying *Rose* rescission to all of a couple's property except a van, which the court divided equitably.[22] In a later unpublished opinion we explained that equitably dividing a single commingled asset may make sense, but applying *Rose* to only one asset does not make sense — if the parties maintained separate economic identities then *Rose* should be applicable to almost all assets, but if the parties significantly commingled assets then *Rose* should not apply at all.[23] Here it appears that the superior court applied *Rose* only to the real property, while applying equitable division to the personal property.

We vacate the superior court's property division and remand for further proceedings.[24] We therefore do not need to decide whether the court erred in its distribution of the two vehicles, as they will be a part of any new property division. We

---

[21]     *Cf. Cartee v. Cartee*, 239 P.3d 707, 713 (Alaska 2010) (requiring findings to support property division applying *Wanberg* rules and *Merrill* factors).

[22]     952 P.2d 268, 273-74 (Alaska 1998).

[23]     *Morrissette v. Kim*, Mem. Op. & J. No. 1267, 2006 WL 3334056, at *2 n.12 (Alaska, Nov. 15, 2006).

[24]     Because the superior court failed to make factual findings determining whether Aaron and Chachee commingled their property, we decline to decide whether they significantly commingled assets and whether the superior court is precluded from applying *Rose*. But we note that this case appears similar to *Bell v. Bell* where we found that the parties commingled assets to purchase and improve properties, the commingled assets were a substantial portion of the parties' income, and the "assets to which there has been mutual contribution by the parties greatly depreciate or appreciate in value." 794 P.2d at 102.

do not mean to suggest that the court's allocation of the many other items of personal property is vacated, although if the court engages in an equitable distribution of all of the parties' marital (and possibly pre-marital, cohabitation) property, it may reallocate the property or order an equalization payment to achieve an equitable distribution.

## IV.   CONCLUSION

For the reasons stated above, we VACATE the property division and REMAND for further proceedings.