Charles B. COX, Appellant
and Cross–Appellee,

v.

Vicki M. COX, Appellee and
Cross–Appellant.

Nos. S–6912, S–6962.

Supreme Court of Alaska.

Feb. 7, 1997.

Donna C. Willard, Law Offices of Donna C. Willard, Anchorage, for Appellant and Cross–Appellee.

R. Scott Taylor, Rice, Volland & Taylor, P.C., Anchorage, for Appellee and Cross–Appellant.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

MATTHEWS, Justice.

On remand from our first decision in this case, *Cox v. Cox,* 882 P.2d 909 (Alaska 1994) (*Cox I* ), the superior court adhered to its view that an equal division of the parties' marital property was appropriate, made certain adjustments in response to our decision, and divided marital property as indicated in the following table:

| Marital Asset | Market Value | Less Liability | Net Value To C.B. | To Vicki |
|---|---|---|---|---|
| 8260 Pokey Circle | $ 36,000 | ($ 62,047) | ($ 26,000) [1] | |
| 2710 Kingfisher | $145,000 | ($144,999) [2] | $ 1 | |
| Deshka Property | $ 28,000 | ($ 12,450) | | $ 15,000 [3] |
| PERS (marital share) | $ 48,982 | | $ 24,491 | $ 24,491 |
| SBS (marital share) | $ 41,201 | | $ 20,600 | $ 20,600 |
| Deferred Comp (mar sh) | $ 64,195 | | $ 64,195 | |
| C.B. IRA | $ 6,000 | | $ 3,000 | $ 3,000 |
| 1991 Tax Refund | $ 2,300 | | $ 2,300 | |
| Airboat | $ 6,000 | | | $ 6,000 |
| 1989 Blazer | $ 12,000 | | | $ 12,000 |
| Parker & Parsley Invest. | $ 4,200 | | | $ 4,200 |
| Dean Witter Acct. | $ 1,000 | | | $ 1,000 |
| Personal Property | $ 3,500 | | $ 1,000 | $ 2,500 |
| Vicki Checking Acct. | $ 288 | | | $ 288 |
| Personal Injury | $ 1,648 | | | $ 1,648 |
| Vicki IRA | $ 6,000 | | | $ 6,000 |
| Vicki 401K | $ 15,200 | | | $ 15,200 |
| Vicki Life Insurance | $ 541 | | | $ 541 |
| | | | $ 89,587 | $112,468 |
| Judgment from Vicki to C.B. | | | $ 11,440.50 | ($11,440.50) |
| Final Asset Distribution | | | $101,027.50 | $101,027.50 |

From this amended judgment Charles B. Cox (C.B.) appeals and Vicki M. Cox cross-appeals. The issues raised and our disposition concerning each are as follows.

*The Appeal*

1. *C.B.'s Checking Account*

At the first trial the court valued C.B.'s checking account at $2,555 and awarded this sum to Vicki. This was the account's value when the parties separated. At the time of trial there was no money in the account. In *Cox I* we ruled that this was error, stating:

If assets no longer exist or are not owned by the parties, they are not available for distribution. However, where there is evidence that a marital asset was dissipated, wasted, or converted to a nonmarital form, the court can "recapture" the asset by giving it an earlier valuation date and crediting all or part of it to the account of the party who controlled the asset.

**1.** The court evidently treated ($47) as de minimis.

**2.** Representing the outstanding mortgage of $137,900, plus costs of sale.

**3.** Reflecting what may be a typographical error; the parties stipulated to a $15,500 value.

*Id.* at 918 n. 5. Prior to our ruling, C.B. paid the awarded $2,555 plus interest to Vicki as required by the judgment. On remand, the trial court properly valued C.B.'s checking account at zero, but did not order Vicki to return the $2,555.

■ C.B. argues that the court erred in failing to require Vicki to reimburse C.B. for the sum in question. Vicki's response is that "[t]o the extent that the trial court erred in failing to order the return of this distributed asset" the error was harmless for the court made an approximately equal and offsetting error concerning valuation of the airboat awarded to Vicki.

We conclude that the court should have given an effective remedy for the error concerning the account. This error could have been corrected simply by valuing the checking account at zero if Vicki had not already collected on the judgment. Given that she did collect, what was required was an order requiring reimbursement. Vicki's argument concerning valuation of the airboat is unavailing since, as we rule below, the airboat was the separate property of C.B. and should not have been awarded to Vicki.

2. *Classification of Property Purchased with Proceeds of Pokey Circle House Refinancing*

C.B. contends that the refinancing of the Pokey Circle house—which was his prior to the marriage—resulted in cash which was his separate property. This was expended, in part, to buy the investment partnership, the airboat, and the IRA for C.B. The trial court on remand treated these properties as marital rather than separate property, reasoning that on remand the parties had stipulated that they intended to treat Pokey Circle as marital property, and that therefore the "re-financing debt" was marital and so, presumably, were the proceeds.

■ C.B. argues that although on remand he agreed that the Pokey Circle property could be considered marital property, he did not agree that the proceeds of the refinanc-ing were marital property. He argues that the three items of property listed above were not jointly held and that there is no evidence that the parties intended to transmute them from separate into marital property. Vicki argues that the proceeds from the refinanc-ing of the Pokey Circle property were mari-tal since the Pokey Circle property was stip-ulated to be marital.

In *Cox I* we assumed that the refinancing proceeds were the separate property of C.B. Thus, concerning these proceeds we stated: "To treat C.B.'s contribution of premarital assets as marital property would not ordi-narily be an abuse of discretion if there is evidence that C.B. intended the transmuta-tion of separate property into marital proper-ty and there are acts which demonstrate that intent." *Id.* at 916. We noted with respect to the three items in question that there was no presumption that they had been transmut-ed from separate property into marital prop-erty and remanded "for classification of these assets." *Id.* at 916.

Until the Pokey Circle property was refi-nanced it was the separate property of C.B. For the first year of their marriage the parties occupied Vicki's house on Northern Lights Boulevard. *Id.* at 912. They then moved into a house on Kingfisher Drive ac-quired in part with a portion of the refinanc-ing proceeds. Arguably the Pokey Circle house was transmuted from separate to mari-tal property when it was refinanced, for C.B. then transferred title to himself and Vicki jointly, and both C.B. and Vicki became liable on the deed of trust note. Since it was the refinancing which, at the earliest, effected the transmutation of the property, it does not follow that the proceeds from the refinancing were marital in character. In essence, C.B. sold the property to the marital estate, which paid him for it with the refinancing proceeds. The proceeds thus remained the separate property of C.B. We conclude that C.B. is correct on this issue and that the court erred in failing to classify C.B.'s IRA, the invest-ment partnership, and the airboat as sepa-rate property.[4]

---

4. After the remand trial Vicki sold the airboat to C.B. for $3500. Since the airboat was the sepa-rate property of C.B. and should not have been awarded to Vicki, she will have to return the $3500 she received for it.

### 3. Consideration of Equitable Factors

[3] C.B. argues that the trial court failed to take into consideration as required by *Cox I* the fact that marital funds were used to pay Vicki's premarital debt, the use of C.B.'s premarital and post-separation funds for marital purposes, C.B.'s partial support of Vicki's children, and Vicki's use of marital assets for post-separation expenses.

In *Cox I* we directed the court to consider on remand whether (1) "C.B.'s payments of the marital debts from post-separation earnings and his personal checking account," and (2) "Vicki's expenditure of marital assets for post-separation expenses, should cause a change in the property distribution." *Id.* at 919–20. In addition, we remanded for "explicit consideration" of the question whether C.B.'s support of Vicki's children from a prior marriage was a factor requiring an adjustment in the property division. *Id.* at 920. We did not require the court to reconsider whether the use of marital property to pay Vicki's premarital debt was a factor requiring an adjustment in the property distribution.

On remand the trial court complied with *Cox I* and considered the equitable factors described above, finding that they did not reflect a need to deviate from the fifty/fifty distribution of marital assets which the court had found to be fair. We thus conclude that C.B.'s argument on this point lacks merit.

### The Cross–Appeal

### 4. Valuation of the Pokey Circle House

■ At the first trial the court awarded the Pokey Circle property to C.B., valuing it as of the time of trial at $62,500, less a mortgage debt of $62,047. In *Cox I* we ruled that the court's valuation was unsupported by the evidence and remanded with directions to value this property. On remand, the trial court adopted the valuation of an appraiser who testified on behalf of C.B. that the Pokey Circle property as of the trial date had a fair market value of $36,000. Since the mortgage debt was the same as previously found, Pokey Circle had a negative value which the court calculated as $26,000.

■ Vicki argues that the appraisal on which the court relied had deducted $14,000 from fair value based on damage to the roof for which C.B. had received $6,000 from an insurance company for repairs after the first trial but before the remand trial. She argues that treating the $14,000 roof loss as marital but the $6,000 recovered from the insurance company as separate property of C.B. was inconsistent. Vicki also argues that the court erred in valuing Pokey Circle as of the 1992 trial date rather than as of the date of the remand trial. She presented evidence that the fair market value at the latter date (December 1994) was approximately $63,000. In response, C.B. argues that the trial court correctly decided to use the date of the original trial rather than the date of the trial on remand for reasons of judicial efficiency and because the Pokey Circle property was refinanced subsequent to the first trial, removing Vicki from liability on the mortgage. C.B. does not comment on Vicki's argument concerning the repair proceeds for the roof.

We conclude that the trial court did not err in using the date of the first trial as the date of valuation for the Pokey Circle property. Given the general change in real estate values in Anchorage, it might have been unjust to have revalued only one of the parties' properties, while the alternative, revaluing all of the real property, would be time consuming and expensive. We observed in *Moffitt v. Moffitt*:

> In some circumstances, it might be unjust to revalue only one asset at the date of the new trial while maintaining old values on all other assets which have been distributed. If so, judicial efficiency might require that valuation take place as of the date of the original trial.

813 P.2d 674, 678 (Alaska 1991). We agree with Vicki's argument concerning insurance recovery for the roof repair. On remand the court is directed to add $6,000 to C.B.'s asset column.

### 5. Award of Cash Judgment

■ The revaluation of the Pokey Circle property which resulted in a net negative value in C.B.'s column of distributed property, resulted in a net distributional difference of $22,881, which the court equalized by re-

quiring Vicki to pay C.B. $11,440.50. Vicki argues that the court should have made an in-kind reallocation from the marital assets rather than requiring her to make a cash payment. She contends that transfer of title is the preferred method for dividing marital property, citing Brett R. Turner, *Equitable Distribution of Property* § 9.02, at 623 (2d ed.1994). This treatise states:

> The most common method for actually dividing the marital estate is by directly transferring title of assets from one party to another. This is the preferred division method in cases where it can be reasonably implemented.

*Id.* (footnote omitted). In response, C.B. argues that it was not error to make a monetary allocation as part of a division of property, citing another section of the same text which states that "it is not error per se to make an award greater than the payor's liquid assets where he or she can sell property to meet the obligation." Turner, § 9.03 at 632. He argues that it would work no hardship on Vicki to make the cash payment required by the judgment of the court.

■ We agree with both of the quoted sections of the Turner text. The preferred method for dividing a marital estate is to transfer title where this can be reasonably accomplished, but it is not error per se to make a cash award requiring one party to sell illiquid assets (or make installment payments) where such an award causes no hardship. Here it does not appear that the court addressed either the question whether equality could be reasonably accomplished by title transfer or whether Vicki could, without hardship, make the cash payment called for by the court's order. On remand the court should address these questions and make such adjustments as may be appropriate.

Based on the present opinion, the marital asset division should be provisionally adjusted as follows:

### Net Value of Marital Assets

|  | To C.B. | To Vicki |
|---|---|---|
| Amount per decision on remand | $ 89,587 | $ 112,468 |
| Airboat (deducted from Vicki's column but not added to C.B.'s column since it was separate property) |  | $( 6,000) |
| Investment partnership (Vicki must transfer this to C.B., but it is not added to C.B.'s column because it is separate property) |  | $( 6,000) |
| C.B.'s IRA (Vicki must transfer the 1/2 she received to C.B. and the 1/2 C.B. received is deducted from his column as it was separate property) | $( 3,000) | $( 4,200) |
| Roof repair proceeds added to C.B.'s marital property account | $  6,000 | $( 3,000) |
|  | $ 92,587 | $  99,268 |

---

The court may equalize the difference between these columns either by a property transfer or a cash or installment award in accordance with the views we have expressed on this subject.

In addition, Vicki must pay C.B. $2,550 plus interest representing the amount she collected on the prior award regarding C.B.'s checking account and $3,500 plus interest, representing the sum she received for the sale of the airboat to C.B.

REVERSED and REMANDED for entry of a revised property division and judgment in accordance with this opinion.