**Greg R. JOHNS, Jr., Appellant,**

v.

**Betty Jo JOHNS, Appellee.**

No. S–7510.

Supreme Court of Alaska.

Sept. 26, 1997.

William T. Ford, Anchorage, for Appellant.

Brian E. Hanson, Pearson & Hanson, Sitka, for Appellee.

Before COMPTON, C.J., and
MATTHEWS, EASTAUGH, FABE and
BRYNER, JJ.

## OPINION

EASTAUGH, Justice.

## I. *INTRODUCTION*

Greg Johns argues that the superior court erroneously resolved property division issues in his divorce proceeding by: (1) treating the F/V ANGIE LEE as marital property; (2) treating the Individual Fishing Quotas (IFQs) as marital property; (3) retaining jurisdiction over roe-on-kelp permits; (4) valuing the marital residence; and (5) distributing the marital property on an equal basis. We affirm.

1. The written findings issued by Judge Larry C. Zervos are models of clarity. Copies of the Findings of Fact and Conclusions of Law are avail-

## II. *FACTS AND PROCEEDINGS*

Greg Johns and Betty Jo Johns were married in September 1984, and separated in October 1993. Betty Jo did secretarial work during the marriage, and has been employed as a secretary with the Sitka School District since 1989. Greg has fished since childhood, and makes his living as a commercial fisher. When he married Betty Jo, he owned a sixteen-foot skiff, a hand troll permit, a power troll permit, and the F/V RADAR.

During the marriage, the parties purchased several substantial assets, including the F/V ANGIE LEE to help expand Greg's fishing business and a marital residence in Sitka. The vessel was titled in both parties' names as joint tenants.

The parties were granted a divorce in January 1996. In its written findings, the trial court awarded fifty percent of the marital assets to each party. The court awarded to Betty Jo the parties' marital residence subject to a $102,300 mortgage balance, and awarded to Greg the assets of the fishing business, including the F/V ANGIE LEE. The vessel was fully paid for at the time of trial. The court determined that the net value of the assets awarded to Betty Jo was $98,100 (representing a total value of $200,-400 minus the $102,300 mortgage balance). The assets awarded to Greg were unencumbered; their value was $217,230. The trial court offset this disparity in value of the assets awarded by requiring Greg to pay approximately $60,000 to Betty Jo.[1] Greg appeals various aspects of the property division.

## III. *DISCUSSION*

### A. *Standard of Review*

Trial courts have broad discretion in dividing property as part of divorce proceedings. *See* AS 25.24.160(a)(4); *Doyle v. Doyle,* 815 P.2d 366, 368 (Alaska 1991). Property division in divorce proceedings involves three steps: (1) determining what property is available for distribution; (2) valuing that property; and (3) allocating the

able from the appellate court clerk's office upon request.

property equitably. *Lundquist v. Lundquist,* 923 P.2d 42, 46–47 (Alaska 1996); *Wanberg v. Wanberg,* 664 P.2d 568, 570 (Alaska 1983).

■ The trial court may only divide property characterized as "marital." The first step in any property division is, therefore, determining whether property is marital or separate. *See Lundquist,* 923 P.2d at 47. "The trial court's characterization of property as marital or separate is reviewed for an abuse of discretion." *Id.* However, when the court makes a legal determination in the course of taking this step, that determination is reviewed *de novo. Cox v. Cox,* 882 P.2d 909, 913 (Alaska 1994).

### B. Treating the F/V ANGIE LEE as Wholly Marital Property

Greg contests the superior court's determination that the F/V ANGIE LEE was marital property. Greg contends that any contributions of premarital assets to the purchase of the vessel, such as the proceeds from the sale of a home in Craig[2] and the sale of the F/V RADAR,[3] should be credited to him and the vessel itself should be considered his separate property.

■ With a few exceptions, all assets acquired by the parties during their marriage are marital property.[4] *Lundquist,* 923 P.2d at 47. In addition, "if the parties by their actions demonstrate an intent to treat any separate property as a marital holding," it is treated as marital property. *Id.* In *Rhodes v. Rhodes,* 867 P.2d 802, 805 (Alaska 1994), we held that a fishing vessel acquired by the husband prior to marriage was properly considered marital property where the parties during their marriage had refinanced the vessel with a loan that was paid off with marital earnings, and the wife had co-signed

for the loan and assumed joint and several liability.

■ In this case, the parties purchased the F/V ANGIE LEE during their marriage, and took joint title to the vessel. Although holding joint title is not determinative of intent to treat property as marital, it creates " 'rebuttable evidence that the owner intended the property to be marital.' " *Lundquist,* 923 P.2d at 48 (citations omitted). Betty Jo's father co-signed for the initial bank loan, and loaned the couple the initial down payment for the vessel. Betty Jo and Greg were jointly and severally liable for the initial loan. During their marriage, the parties also modified or refinanced the loan, using joint funds earned primarily from Greg's fishing business to repay the loan.

Greg argues that Betty Jo's name was placed on the title solely because the bank required it. Nevertheless, he did not object to Betty Jo's name being placed on the title. Betty Jo argues that the parties always intended to treat the F/V ANGIE LEE as joint property.

Based upon the foregoing, the trial court did not err in finding that the F/V ANGIE LEE was a wholly marital asset.

### C. Determining that the Individual Fishing Quotas (IFQs) Were Marital Property Subject to Division

The qualifying years for the federal Individual Fishing Quota (IFQ) program for halibut and black cod (sablefish) are 1988, 1989, and 1990. 50 C.F.R. § 676.20(a)(1)(i) (1994). As a result of Greg's participation in these fisheries during one of the qualifying years, he was eligible under the IFQ program to apply for "quota shares" to fish for both halibut and black cod. Under the IFQ pro-

---

2. In 1985 Greg's parents transferred a home located in Craig to Greg and Betty Jo; the quitclaim deed transferred the home to Greg and Betty Jo as husband and wife. The parties sold the home for $30,000 in February 1985. Betty Jo testified that the transfer of the home was necessary to facilitate the purchase of the F/V ANGIE LEE. The parties disagree about the amount applied to the loan for the F/V ANGIE LEE from the sale proceeds of the Craig home.

3. In May 1985 Greg sold the F/V RADAR for $8,000 and used $4,000 of the monies received to pay the loan for the F/V ANGIE LEE. The remaining $4,000 was used for various expenses for the fishing business.

4. Gifts or inheritances received by one spouse during marriage are generally not considered marital property. *See Bellanich v. Bellanich,* 936 P.2d 141, 144 (Alaska 1997); *Lundquist v. Lundquist,* 923 P.2d 42, 47 n. 3 (Alaska 1996).

gram, the initial quota shares of qualified fishers are proportional to their historical landings on vessels owned or leased during the "base years" of 1984 through 1990 for halibut, and 1985 through 1990 for black cod. 50 C.F.R. § 676.20(b) (1994). Greg applied for IFQs in these species in October 1994; they were issued to him in 1995. The IFQs are transferable, and Greg and Betty Jo stipulated to their value.

 Greg contends that the trial court erred in characterizing the IFQs as divisible marital property. We have previously determined that "[a]n IFQ creates a property interest which, if marital, is subject to division." *See Ferguson v. Ferguson*, 928 P.2d 597, 600 (Alaska 1996). In *Ferguson*, we held that a spouse's interest in an IFQ is his or her separate property to the extent that the size of the quota share is attributable to labor performed prior to the marriage, and marital property to the extent that it is attributable to labor performed during the marriage. *Id.*

 Although Greg applied for and received his IFQ shares after the parties had separated, the parties remained married during 1988, 1989, and 1990, the qualifying years for participation in the IFQ program. *See* 50 C.F.R. § 676.20(a)(1)(i) (1994). Furthermore, the parties were in a married state during 1984 through 1990, the years upon which the size of the "quota shares" is based. *See* 50 C.F.R. § 676.20(b) (1994). Nevertheless, while Greg concedes that IFQs may be considered marital property, he argues that the "marital character" of the IFQs should not be determined simply based upon whether the parties were married during the qualifying years. Greg's rationale is that his participation as a commercial fisher is lifelong, extending before his marriage to Betty Jo, and that Betty Jo reaped the benefits of his fishing while the parties were married such that the IFQs do not represent "any sort of marital gain or loss."

Greg's IFQ eligibility is based not upon his "lifelong participation" in the halibut and sablefish fisheries, but upon the work he performed during his marriage to Betty Jo. As the trial court noted, in order to fish during the qualifying years for the IFQs, Greg expended marital assets and effort, and Betty Jo is entitled to share in the benefits received from these efforts.

Greg also contends that *Ferguson* should not control because the court in *Ferguson* did not consider the "economic impact [on the fisher] of a marital division" of IFQs. Greg contends that the IFQ program acts as a legal disability to fishers, and that quota shares are analogous to workers' compensation benefits or early retirement benefits in that their transferability compensates a fisher for lost future earnings which are not marital property. *See Miller v. Miller*, 739 P.2d 163, 165–66 (Alaska 1987) (holding that workers' compensation disability benefits received by disabled spouse are marital property only to the extent that they compensate for loss of earnings during the marriage); *In re Frahm*, 45 Cal.App.4th 536, 53 Cal.Rptr.2d 31, 37 (1996) (holding that whether a spouse's employment termination benefit is separate or marital property is determined by whether the right to payment accrued during marriage).

 Unlike workers' compensation benefits, or early retirement benefits, IFQs are not intended to compensate fishers for lost future earnings, but to conserve the sablefish and halibut fisheries. *See Ferguson*, 928 P.2d at 598. Greg's IFQs are marital assets that he may transfer at any time, but they were not issued as a substitute for lost future earnings. Fishers who transfer their IFQ shares may engage in other employment. We conclude that the trial court did not err in finding that Greg's IFQs are marital property.

D. *Retaining Jurisdiction over Greg's Herring Roe-on-kelp Permits for Possible Future Division*

During the marriage, Greg purchased interim roe-on-kelp permits for herring roe harvests near Craig and near Hoonah. The State has limited the issuance of interim permits and is expected to eventually issue permanent limited entry permits for these fisheries. Greg testified that he may be able to get permanent roe-on-kelp permits based on his past participation in these fisheries.

The interim permits are not transferable and both parties agreed at trial that they presently have no resale value. Using the "jurisdiction-retaining" device espoused in *Laing v. Laing* in context of non-vested pensions, the superior court retained jurisdiction over Greg's interim permits in anticipation of the possibility they might become permanent. *See Laing v. Laing,* 741 P.2d 649, 657–58 (Alaska 1987) (holding that trial courts may retain jurisdiction over non-vested pensions until the pensions vest so that trial courts can then equitably divide the marital portion of the pensions).

Greg contends that the superior court abused its discretion in retaining jurisdiction over his interim permits.[5] Greg argues only that since any regulatory scheme for the roe-on-kelp permits will be similar or identical to the IFQ scheme, his arguments regarding the IFQs apply to this issue as well. As we noted above, IFQs are assets subject to property division.

■ The parties agreed that Greg's interim permits are presently valueless. If permanent permits are issued they may be marketable and transferrable. To the extent the parties were married during the qualifying years for permanent permits, permanent permits will have a marital component and will be subject to property division. As with the IFQs, Greg may have expended marital assets and effort in securing rights to receive permanent permits. Thus, the superior court did not abuse its discretion in retaining jurisdiction over Greg's interim herring roe-on-kelp permits.[6]

### E. *Valuing the Sitka Marital Residence*

Greg and Betty Jo purchased a residence in Sitka in 1987 for $155,000. At the time of trial, Betty Jo continued to reside in the house. The house has a small attached apartment that the parties have previously rented. The parties stipulated that the mortgage balance for the house was $102,300 at the time of trial. Both parties presented expert testimony regarding the fair market value of the house. Betty Jo's expert, a certified real estate appraiser, valued the residence at $171,000 using the "sales comparable" approach in which he relied on the history of prior sales of properties in Sitka similar to the parties' residence. Greg's expert, a licensed real estate broker, testified that she would list the house at $195,000, and "hope to not have to take anything under 185,000."

In valuing the residence at $171,000, the trial court stated:

> Two experts testified about the value of the home at trial. Although both were convincing, the court believes Betty's attorney best described the difference between the two opinions. The broker's opinion represented the seller's hope while the appraiser's opinion represented the most reasonable value based on market data. While the court agrees that the Sitka market has been strong, the appraiser's report took into account recent sales. The broker, on the other hand, testified that if an offer was not received at least close to $185,000, the house should not be sold. The broker's opinion represents what the seller might try to demand from the market not necessarily what a ready, willing, knowing and reasonable seller and buyer would agree the house is worth.

■ Greg argues that the superior court erred in valuing the residence at $171,000. A trial court's determinations of the value of marital assets are factual decisions that will be reversed only if clearly erroneous. *See Cox,* 882 P.2d at 913–14.

Greg first contends that the court erred in accepting the appraiser's valuation of the marital residence because the appraiser "admitted that [the $171,000 appraisal] was a low appraisal and perhaps did not accurately reflect the market value." The appraiser did testify that appraisers tend to be conservative in their valuations, but also testified that he was not surprised that the broker's valua-

---

**5.** We review this ruling for abuse of discretion. *Wainwright v. Wainwright,* 888 P.2d 762, 765 n. 6 (Alaska 1995).

**6.** Because Greg testified he intends to continue participating in these fisheries in the future, we need not consider whether a failure by Greg to pay the annual permit fees or to apply for the permits would violate the court's order.

tion of the home was higher than his appraisal because brokers are "going to look at trying to get the highest dollar and expect to be negotiated down." The appraiser stated that while he did not "claim that fair market value is what . . . you can sell your house for," his estimate was based on "the most probable" selling price.

■ Greg also argues that in making its valuation the superior court failed to consider that the property was appreciating and income-producing. In its written findings, the trial court noted that although "the Sitka market has been strong," the appraiser had included the rate of appreciation in his appraisal. The trial court also addressed the income-producing nature of the property in its findings. Considering the entire record, we find the trial court did not err in its valuation of the marital residence.

### F. *Distribution of the Property*

■ The final step in the property division process is determining whether an equitable property distribution is possible. This court reviews the trial court's determination on the equitable distribution of property under an abuse of discretion standard, reversing its decision only if it is clearly unjust. *Lundquist,* 923 P.2d at 53 (citing *Cox,* 882 P.2d at 914).

■ Greg contends that the superior court's overall distribution of the parties' property was inequitable. Greg first claims that the superior court should have simply awarded the marital residence to Betty Jo, and awarded him all of his fishing assets without any offset to equalize the distribution. Greg also challenges the value the court assigned to the Sitka residence, and the court's determination that the F/V ANGIE LEE was marital property. These arguments simply restate other issues appealed by Greg and resolved above.

■ Furthermore, the trial court divided Greg and Betty Jo's marital property on a fifty-fifty basis. We presume that a fifty-fifty division of property is equitable. *See Carlson v. Carlson,* 722 P.2d 222, 225 (Alaska 1986). In making its property division, the trial court also considered the equitable factors set forth in *Merrill v. Merrill,* 368 P.2d 546, 547–48 n. 4 (Alaska 1962). *See also* AS 25.24.160(a)(4).

Greg asserts that the trial court erred in failing to consider the economic hardship caused to him by its award of the $60,000 cash judgment because he may have to sell the F/V ANGIE LEE or his IFQs to pay the judgment. In *Cox v. Cox,* 931 P.2d 1041 (Alaska 1997), we reversed the superior court's award of an $11,000 cash judgment to equalize a property division. We noted that the preferred method for dividing a marital estate is by title transfer where this can be reasonably accomplished, but also observed that it is not error per se for the trial court "to make a cash award requiring one party to sell illiquid assets (or make installment payments) where such an award causes no hardship." *Id.* at 1045.

The trial court did consider the hardship to Greg when it awarded Betty Jo the $60,000 cash judgment. In its findings, the trial court stated that it chose, in part, to award an equal division of marital assets, rather than the unequal distribution Betty Jo requested, because "Greg will be required to pay Betty for her marital share of the IFQs and the permits. This may require him to sell some of the assets or to take out a significant loan." The trial court also suggested that its "first preference" was to have Greg pay Betty Jo the full judgment within ninety days, but stated that Greg could also give Betty Jo a secured note with the "shortest pay-off possible." The trial court therefore did consider possible hardship to Greg and suggested a means of ameliorating it. Thus, we find that the superior court did not err in its overall property distribution.

### IV. *CONCLUSION*

AFFIRMED.