Daniel A. NICHOLSON, Appellant,

v.

Deborah K. WOLFE, Appellee.

No. S–8130.

Supreme Court of Alaska.

March 26, 1999.

---

**420**

Steven Pradell, Steven Pradell & Associates, Anchorage, for Appellant.

David R. Edgren, Robertson, Edgren & Christensen, LLC, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, and COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

Daniel A. Nicholson appeals the trial court's division of property. We affirm in part, reverse in part, and remand for further consideration.

## I. FACTS AND PROCEEDINGS

Deborah K. Wolfe, now in her early forties, and Daniel A. Nicholson, in his late fifties, began living together in 1985 and were married in 1989. They separated in June 1994 and divorced in June 1996. Throughout their cohabitation, the parties lived in a house owned by Nicholson. Wolfe has been a teacher in Anchorage for over twelve years and earns about $58,600 per year. For the first five years of their cohabitation, Nicholson was in active duty in the Air Force. He retired three days before the wedding and has since received a $2,013 net monthly pension and medical benefits from the federal government. Since his retirement, Nicholson has held various temporary jobs.

In 1993 Nicholson inherited about $32,000 from his mother's estate, and between $145,000 and $147,000 from his father's estate. Nicholson testified that he spent virtually all of the money on personal expenses and on acquiring business assets, in particular by the purchase and improvement of an empty lot on Tudor Road ("the Tudor property"). In June 1995 Nicholson invested $65,000 from his remaining inheritance funds in the Tudor property. He stated that he had intended to operate a trailer park on the property, but discovered after he made the purchase that the parcel was no longer zoned for that use. Wolfe makes no claim to this parcel.

Nicholson started a snowplowing and landscaping business, Northstar, in 1986 and ran the business out of the family home. He purchased much of the equipment for the business with his separate property before and during the marriage. Nicholson stated that he abandoned the business in the fall of 1994, just after the parties separated. In addition, during the marriage, the parties began a wedding consulting and supply company, Perfect Impressions, which they operated out of their home. Although Nicholson performed most of the day-to-day work of these businesses, Wolfe helped out from time to time. Neither business was especially profitable. The parties agree that Perfect Impressions is a non-marital asset belonging to Nicholson, but they contest the ownership of Northstar's significant assets, which the trial court valued at $73,440.

In the divorce proceedings, the court identified as marital property some of the contents of the marital residence, the Northstar business and its assets, a motor home,

Wolfe's retirement benefits, and an ATV (all-terrain vehicle); the cost of storage for the Northstar assets that had accrued as of separation—$12,756.11—was the sole marital debt. On appeal, Nicholson challenges numerous aspects of the property division.

## II. DISCUSSION

### A. The Trial Court Did Not Err in Choosing Not to Use Rescission Principles as the Proper Method of Property Division.

■ Alaska has adopted an equitable distribution system for dividing marital property in divorce actions.[1] This court has created a limited exception to this general rule, however, in Rose v. Rose.[2] In that case, we held that after a relatively brief marriage, in which the parties have "maintained completely separate economic identities," [3] the trial court may "treat the property division as an action in the nature of rescission." [4] Nicholson asks us to extend that rule and hold that in circumstances where the Rose criteria are met, the court must apply Rose rescission principles.

■ Nicholson argues that in his case the trial court should have applied the Rose recission principles rather than the equitable principles employed in most property divisions.[5] We have often recognized the trial court's broad discretion in determining a just disposition of property based upon the facts in the particular case before it, and have repeatedly held that we will reverse the trial court's determination only where it is clearly unjust.[6] In Rose, we held that it was not

clearly unjust to apply recission principles where there was no significant commingling of assets:

> [I]n marriages of short duration, where there has been no significant commingling of assets between the parties, the trial court may, without abusing its discretion, treat the property division as an action in the nature of rescission, aimed at placing the parties in, as closely as possible, the financial position they would have occupied had no marriage taken place.[7]

Thus, in Rose, we held that the trial court had discretion to apply rescission principles under the circumstances presented; we neither held nor implied that the court was required to apply recission principles. Since Rose, we never have held that it would be clearly unjust to adopt equitable rather than rescission principles,[8] and we decline to do so today. Rose stands for the limited proposition that trial courts have discretion to apply rescission principles in certain circumstances. But since equitable division is the prevailing rule, we decline to hold that a trial court would ever be required to adopt rescission.

### B. The Trial Court's Property Distribution Order Must Be Remanded in Part for Reconsideration.

#### 1. The trial court's equal allocation of the marital property was not clearly unjust.

Nicholson contends that although the trial court claimed to be applying the Merrill [9] factors in allocating the marital property equally between the parties, it "did not prop-

1. See AS 25.24.160.

2. 755 P.2d 1121 (Alaska 1988).

3. Id. at 1125.

4. Id.

5. See, e.g., Wanberg v. Wanberg, 664 P.2d 568, 570 (Alaska 1983).

6. See, e.g., Morris v. Morris, 724 P.2d 527, 529–30 (Alaska 1986); Vanover v. Vanover, 496 P.2d 644, 645 (Alaska 1972).

7. Rose, 755 P.2d at 1125 (emphasis added).

8. See McCoy v. McCoy, 926 P.2d 460, 462 (Alaska 1996) ("The decision to apply Rose when there is no significant commingling of assets is a matter of discretion."); Zimin v. Zimin, 837 P.2d 118, 121 (Alaska 1992) (holding it was not abuse of discretion for court to decline to apply Rose where the parties "did not maintain completely separate economic identities" during marriage); cf. Cox v. Cox, 882 P.2d 909, 915 (Alaska 1994) ("It is one thing to hold that use of the source of funds rule in limited circumstances is not an abuse of discretion; it would be quite a leap ... to hold that it must be applied in a given set of circumstances as a matter of law.").

9. See Merrill v. Merrill, 368 P.2d 546, 547–48 & n. 4 (Alaska 1962).

erly consider" the *Merrill* factors. Specifically, he argues that the trial court did not appropriately consider the parties' ages, earning capacities, and financial conditions.

The trial court has broad discretion in fashioning an equitable property distribution.[10] We will reverse an allocation only if it is clearly unjust.[11] In exercising its discretion, the trial court must consider the duration of the marriage, the stations in life of the parties, their ages, physical conditions, earning capacities, conduct of financial affairs during the marriage, and circumstances and needs.[12] With regard to specific property, it should also consider when and how the parties acquired the property, its value at the time of the division, and its income-producing capacity, if any.[13] This enumeration is not exhaustive, and the trial court need not make findings pertaining to each factor,[14] but its findings must be sufficient to indicate the factual basis for the conclusion reached.[15] We will not reevaluate the merits of the trial court's property division in most cases in which it makes these threshold findings.[16]

An equal division of the marital property is presumed to be equitable.[17] The trial court began with this presumption and concluded that "[a] preponderance of the evidence fails to establish [relevant facts suggesting] that the *Merrill*/statutory factors should result in less than equal division of marital property in this case." The trial court supported its conclusions with adequate findings. In support of its conclusion, the court noted that "[b]oth parties are in good

health, have education, multiple skills, training, and job experiences that make them viable employees in several job markets." Wolfe has a steady job as a teacher. After separation, she earned a master's degree. Nicholson, who retired from the military as a lieutenant colonel just days before the marriage, also has a master's degree in public administration. Implicitly rejecting Nicholson's poorly substantiated claims of financial ruin, the court went on to note that although Nicholson was older than Wolfe, he had a steady retirement income and substantial inheritances. It commented that "although he has been less than careful about maintaining the Northstar Landscaping assets," he had the potential to reactivate that business as well as the Perfect Impressions business. Nicholson argues that the court erred when it considered as a factor the possibility of reactivating Northstar. But the court properly considered "the income-producing capacity" of Northstar [18] and, in any case, did not appear to give much weight to this factor. It noted the "potential" for Nicholson to restart Northstar but recognized that the assets were not well maintained. This was not error.

In examining the factors considered, we cannot conclude that the trial court's allocation was clearly unjust. Contrary to Nicholson's contentions, the trial court did consider the parties' ages, earning capacities, and financial conditions: It noted that Nicholson was older, but also took note of his retirement income and inheritances; it compared their respective educations and experiences;

10. *See Cox,* 882 P.2d at 913; *see also McCoy,* 926 P.2d at 463 ("The superior court's distribution will not be disturbed unless it is so clearly unjust as to constitute an abuse of discretion.").

11. *See Compton v. Compton,* 902 P.2d 805, 808 n. 2 (Alaska 1995).

12. *See* AS 25.24.160(a)(2); *Merrill,* 368 P.2d at 547–48 & n. 4.

13. *See* AS 25.24.160(a)(4).

14. *See Brooks v. Brooks,* 677 P.2d 1230, 1233 (Alaska 1984) (citing *Merrill,* 368 P.2d at 548 n. 10).

15. *See Merrill,* 368 P.2d at 548 n. 10; *see also Burcell v. Burcell,* 713 P.2d 802, 805 (Alaska

1986) (finding that trial court's application of *Merrill* factors was clearly erroneous).

16. *See Wanberg v. Wanberg,* 664 P.2d 568, 574 n. 20 (Alaska 1983) ("Given adequate factual findings, and a demonstration that the trial court weighed those facts in reaching its conclusion, we will not overturn a property division unless it is clearly unjust."); *Merrill,* 368 P.2d at 547–48.

17. *See Miles v. Miles,* 816 P.2d 129, 131 (Alaska 1991); *Wanberg,* 664 P.2d at 574–75.

18. *See* AS 25.24.160(a)(4)(I); *see also Lang v. Lang,* 741 P.2d 1193, 1196 (Alaska 1987) (requiring trial court finding on income-producing potential of marital property).

and it put their financial circumstances into the balance, which we have discussed above. Although the trial court could have reached another result without abusing its discretion, we cannot conclude that the result it reached was clearly unjust.

2. *The trial court failed to make an adequate finding that the parties intended to treat the Northstar business as marital property.*

 The trial court may only divide property characterized as marital.[19] "Separate property becomes marital only upon a showing that the parties intended to treat the property as marital," [20] and that "there is an act or acts which demonstrate that intent." [21] Separate property may be invaded in the overall property distribution only when the court finds that the equities demand an invasion.[22] The trial court found that Nicholson started the Northstar business prior to the parties' marriage. Wolfe admits that Nicholson established Northstar's assets with his separate property. The trial court did not find that the Northstar assets were marital because the parties intended to treat them as such. Instead, it found that it would be unfair to treat the property as separate, since both parties had contributed significant efforts to the business during the marriage.

Nicholson argues that the trial court erred in focusing solely on the parties' acts and disregarding their intentions. We agree.

 Without finding that the parties intended to convert Northstar to marital property, the trial court could not properly consider the business to be a marital asset.[23] In determining the existence of this intent, the court could look to the parties' conduct. "It is true that parties may, by their actions during marriage, demonstrate intent to treat specific [separate] properties as joint holdings...." [24] We have previously described a variety of ways in which conduct may evince an intent to transmute separate property:

[S]eparate real estate can become marital where the owner permits the non-owner spouse to lend her credit to improve the property, or to devote substantial efforts to its management, maintenance or improvement, or where the parties use the premises as their personal residence. Similarly, placing separate property in joint ownership is rebuttable evidence that the owner intended the property to be marital. Likewise, agreements oral or written, may demonstrate the owner's intent, or lack of intent, to convert separate property to marital property.[25]

 In the present case, we recognize that the trial court might have believed that the parties' conduct demonstrated their intent to treat Northstar as marital property. But the court did not make this finding expressly; nor does the record convince us that it made this finding implicitly.

In fact, much of the evidence would seem to indicate a contrary intent. The record indicates that Nicholson maintained title to the Northstar assets in his name alone; he meticulously kept separate records, so that

19. *See Johns v. Johns,* 945 P.2d 1222, 1225 (Alaska 1997).

20. *Dunn v. Dunn,* 952 P.2d 268, 273 (Alaska 1998) (citing *Chotiner v. Chotiner,* 829 P.2d 829, 832 (Alaska 1992)).

21. *Chotiner,* 829 P.2d at 832.

22. *See* AS 25.24.160(a)(4), *construed in Carlson v. Carlson,* 722 P.2d 222, 223–24 (Alaska 1986); *see also Matson v. Lewis,* 755 P.2d 1126, 1127 n. 2 (Alaska 1988) (reporting that one of the primary justifications for discretionary invasion is where the non-owning spouse makes contributions to the marital community that benefit the premarital property).

23. *See Bellanich v. Bellanich,* 936 P.2d 141, 144 (Alaska 1997) (vacating trial court's treatment of property as marital because it made no findings regarding spousal intent).

24. *Carlson,* 722 P.2d at 224.

25. *Chotiner,* 829 P.2d at 833 (citations omitted); *see also Dunn,* 952 P.2d at 273–74 (upholding court's determination that van was marital asset where parties commingled funds to purchase the vehicle, it was held solely in husband's name, husband encouraged wife to sell her car and use van, and wife was primary driver of van for a while and controlled its use); *Johns v. Johns,* 945 P.2d 1222, 1225 (Alaska 1997) (upholding court's finding that boat was marital property where the parties took joint title to the boat and co-signed on the purchase loan).

Wolfe was unaware of the assets and debts of the business, and exerted minimal control over them; Wolfe never assumed any liability for the business, nor did she co-sign any business loans; Nicholson spent little or no marital monies on the business. According to Wolfe, she helped set up Northstar's books (although she apparently did not maintain them), answered the business phone, and occasionally accompanied Nicholson "on *his* business activities" (emphasis added).

Given these facts, we cannot overlook the absence of an express finding of intent to treat the Northstar assets as marital property. Without expressly finding an intent to transmute, the trial court could not properly designate Northstar as marital property. Accordingly, we must vacate the court's decision on this point and remand for reconsideration. On remand, the court should treat Northstar as Nicholson's separate property, and revise the property division accordingly, unless it expressly finds an act or acts that demonstrate the parties' intent to treat the property as marital.[26] Because we remand for further findings on this point, we need not address Nicholson's related arguments challenging the adequacy of the court's findings and conclusions valuing and dividing the Northstar property.

### 3. *Other property issues*

Nicholson also challenges numerous specific aspects of the trial court's property division.

The court awarded the motor home to Wolfe, credited her with $1,300 she spent in repairing it, and did not offset Nicholson's costs in storing and insuring it. Nicholson asserts that the court abused its discretion in failing to award the motor home to him because he asked for and needed it. The needs of the parties are relevant considerations in the allocation of the marital property.[27] Nicholson testified that he needed the motor home to live in and would place the motor home on the Tudor Road property. But he also testified that the Tudor Road property was not connected to water or electrical services. On this basis, the court could have reasonably concluded that Nicholson's claimed need for the motor home was unrealistic. We cannot conclude that the court's failure to award Nicholson the motor home was clearly unjust.

Nicholson also argues that the court erred in crediting Wolfe for her repair payments. But a court may properly consider post-separation payments made from separate income in order to preserve marital property and has the discretion to give the paying party credit for these payments.[28] Wolfe testified that while storing the motor home, she spent $1,300 on cleaning, registering and titling the vehicle, and changing the oil, filter, plugs and tires. Nicholson also testified that he incurred costs to insure the motor home. But because Nicholson failed to submit any evidence specifying the costs he incurred, we conclude that the court did not abuse its discretion in failing to credit them.

Nicholson next contends that the trial court erred in concluding that his ATV was a marital asset, not a separate business asset. Nicholson argues that he paid for the ATV with separate funds in order to use it in the Northstar business. Wolfe and Nicholson both testified—and the trial court found— that the ATV "was used on hunting and fishing trips; it was not used in the businesses." The court evidently relied on this finding in treating the ATV as marital property. But Nicholson's use of the ATV for his own pleasure does not imply an intent to make it an asset belonging to both parties. And unless Nicholson intended the ATV to become marital property, it retained its char-

---

26. In the absence of such a finding, the trial court would be justified in dividing the Northstar assets only if it "specifically found that a 'balancing of the equities between the parties' required invasion of the pre-marital holding." *Carlson,* 722 P.2d at 224; *see also Chotiner,* 829 P.2d at 831. The circumstances here do not appear to require invasion of separate property.

27. *See* AS 25.24.160(a)(4)(G).

28. *See Rodriguez v. Rodriguez,* 908 P.2d 1007, 1013 (Alaska 1995); *Ramsey v. Ramsey,* 834 P.2d 807, 809 (Alaska 1992).

acter as separate property.[29] Accordingly, on remand, unless the court expressly finds the requisite intent, it should treat the ATV as Nicholson's separate asset.

■ Nicholson argues that the trial court erred when it awarded Wolfe a Johnny Johnson print depicting musk oxen. Wolfe testified that she purchased the print during the marriage and hung it in the family home. Nicholson admitted that the print was purchased with "joint funds." The trial court found that the Johnny Johnson print was marital property. Nicholson now claims that it was a gift to him and is his separate property, but points to no evidence to support this assertion. We conclude that the trial court did not err when it identified the print as marital and allocated it to Wolfe.

Nicholson also vaguely refers to other prints and photographs, but points to no error of the trial court with regard to these items. We deem these claims waived for inadequate briefing.[30]

4. *The trial court erred in failing to make findings on certain alleged debts owed to Nicholson by Wolfe.*

■ Nicholson argues that the trial court erred in failing to honor an agreement between Wolfe and Nicholson whereby she would pay him $300 for his computer so that she could donate it to the Civil Air Patrol and receive tax benefits. Apparently, Wolfe never paid Nicholson. The court found that this agreement and debt were not supported by sufficient evidence to make an award. The evidence supporting this debt was purely testimonial. The court found that the testimony was less than reliable and seemed to be motivated by pettiness. The weight accorded to testimony should be determined by the trier of fact.[31] It was not clearly erroneous to find the testimony incredible.

■ Nicholson also argues that he was entitled to payment for damage that Wolfe's dog caused to his house. Nicholson estimated at trial that it would cost about $500 to repair the damage but did not get an appraisal to support his claim. Wolfe admitted that her dog did some damage that was not repaired. She claimed that she offered to repair the damage many times, but that Nicholson declined the offers. Again, the weight accorded to testimony should be determined by the trier of fact. It was not clearly erroneous to find that Nicholson presented insufficient evidence to merit an award.

■ Nicholson further maintains that the trial court failed to credit him for certain insurance reimbursements that Wolfe improperly retained. In addition, he complains that Wolfe should not have been allowed to keep the money remaining in the parties' joint bank accounts. Both of these complaints are meritless. The court reduced Wolfe's share of the business assets to account for the insurance debt and awarded the contents of the joint bank accounts to Wolfe as part of the overall property settlement. As explained above, the overall property settlement was not clearly unjust.

Last, Nicholson argues that the parties verbally agreed that Wolfe would pay half of his mortgage each month while she lived there. He contends that she failed to honor the agreement for the last three months prior to separation. He was not sure of the exact amount of the debt, but estimated that it was about $950 per month for a total of $2,850. Wolfe admitted to no formal contract but did admit that they had an informal agreement to share the household expenses and that she did not pay half of the mortgage for the month prior to separation. The trial court made no express findings on this point. Given Wolfe's admission, the trial court should address this issue on remand and make appropriate findings.

5. *The trial court did not abuse its discretion in awarding Nicholson his portion of Wolfe's retirement benefits in the form of a QDRO.*

■ Trial courts have discretion to distribute retirement benefits to a non-employ-

---

**29.** *See Cox v. Cox,* 931 P.2d 1041, 1043 (Alaska 1997).

**30.** *See A.H. v. W.P.,* 896 P.2d 240, 243 (Alaska 1995) ("Where a point is given only cursory statement in the argument portion of a brief, the point will not be considered on appeal.").

**31.** *See Evans v. Evans,* 869 P.2d 478, 480–81 (Alaska 1994).

ee spouse through either a qualified domestic relations order (QDRO) or through a lump sum payout.[32] In this case, Wolfe accrued significant retirement benefits during the marriage. Nicholson argues that the trial court erred in failing to award him his present interest in the marital portion of Wolfe's retirement in a lump sum rather than in a QDRO. He points out that Wolfe is much younger than he is and argues that he will probably live to see little, if any, of the benefits if paid out in a QDRO. Wolfe counters that the trial court had the discretion to award the benefits either in a lump sum or in a QDRO and properly exercised its discretion in awarding the benefits in a QDRO.

 It is true that the payment of Nicholson's share of Wolfe's benefits through a QDRO entails some risk that he may not live to enjoy them. The court considered this in its findings and conclusions. But the court also heard evidence that Nicholson was not careful with his money. He testified that he had managed to run through over $200,000 in savings and inheritance in just a few years. The court was also aware that Nicholson's own military pension already provided him with a regular and dependable stream of income. Given Nicholson's fiscal irresponsibility, the trial court could have reasonably found it more appropriate to award his share of Wolfe's retirement in the form of a QDRO, so that he would be assured a reliable stream of income in the future. Moreover, although an immediate payout would certainly have ensured that Nicholson would actually recover his share of Wolfe's retirement, a postponed payout through a QDRO did not increase the risk of non-recovery that Nicholson had faced while still married. Nicholson chose to marry a woman many years his junior. As a married man, he had no assurance that he would live until his wife retired; the QDRO did not enhance this pre-existing uncertainty.

 Finally, Wolfe's ability to pay out Nicholson's share of her retirement in a lump

sum was a relevant consideration. Generally, courts have approved of lump sum payouts when there are "marital assets sufficient to satisfy the non-employee spouse's claim without undue hardship on the employee spouse." [33] In this case, Wolfe does not appear to have had any ready source of funds from which she could have made a lump sum payment without undue hardship. Wolfe took from the marriage certain personal property and her share of her retirement benefits. The personal property is illiquid (and may cause hardship to liquidate), and the retirement benefits are unavailable. Therefore, a payout from her share of the marital assets would not be realistic.

For these reasons, we conclude that the trial court did not abuse its discretion in awarding Nicholson his retirement benefits in the form of a QDRO rather than a lump sum payment.

6. *The trial court did not abuse its discretion in declining to award Nicholson rehabilitative alimony.*

Nicholson contends that the trial court erred in concluding that no credible evidence supported his unrebutted claim for alimony. He claims on appeal, as he did below, that he needs extensive training to become qualified as a commercial pilot, which would take two and a half years and cost about $21,400.

 We review the trial court's decision regarding rehabilitative · alimony for abuse of discretion.[34] The purpose of rehabilitative alimony is to allow a recipient spouse who exits a marriage with few job skills and little earning capacity to secure a means of earned income.[35] The trial court found that Nicholson had significant education, skills, and experiences that would make him employable in several job markets. The record supports this finding. We conclude that the trial court did not abuse its discretion in refusing to award Nicholson rehabilitative alimony.

**32.** See *Laing v. Laing*, 741 P.2d 649, 655–58 (Alaska 1987).

**33.** *Id.* at 657.

**34.** See *Ulsher v. Ulsher*, 867 P.2d 819, 821 (Alaska 1994).

**35.** See *Myers v. Myers*, 927 P.2d 326, 329 (Alaska 1996).

**7.** *The trial court did not abuse its discretion in declining to award Nicholson attorney's fees and costs.*

 Nicholson argues that it was an abuse of discretion for the court to decline to order Wolfe to pay a portion of Nicholson's legal fees, including expert witness fees, and costs. The award of attorney's fees in divorce actions is within the broad discretion of the trial court.[36] "Alaska Statute 25.24.140 provides that the court may order one spouse to pay an amount of fees and costs necessary to enable the other spouse to prosecute or defend the action.... The purpose of this statute is to 'assure that both spouses have the proper means to litigate the divorce action on a fairly equal plane.'"[37] The general rule with regard to fees in a divorce case is that the court should consider the economic situation and earning power of each party. If the parties are in comparable economic situations, they should bear their own costs and fees.[38] Generally, a court will award costs and fees only to the economically disadvantaged divorce litigant.[39]

The court rejected the factual predicate for Nicholson's claim—abject poverty—and found the parties to be in roughly similar economic circumstances. There is no reason here to stray from the general rule that equally situated parties should bear their own costs and fees. We conclude that the trial court did not abuse its discretion when it directed each party to pay its own costs and fees.

Nicholson claims that Wolfe was guilty of vexatious conduct, thus justifying an award of costs and fees that might not otherwise be warranted.[40] But the trial court made no finding of vexatious conduct by either party, and Nicholson fails to demonstrate that this amounted to error.

## III. *CONCLUSION*

Because we hold that the trial court erred in treating the Northstar assets as marital,

we REVERSE and REMAND for reconsideration of this aspect of the property division. Additionally, we REMAND for specific findings concerning the alleged mortgage payments that Wolfe owes to Nicholson. We AFFIRM the trial court's decision in all other respects.

**36.** *See Kowalski v. Kowalski,* 806 P.2d 1368, 1372 (Alaska 1991).

**37.** *Id.* (quoting *Lone Wolf v. Lone Wolf,* 741 P.2d 1187, 1192 (Alaska 1987)).

**38.** *See Doyle v. Doyle,* 815 P.2d 366, 373 (Alaska 1991).

**39.** *See Hilliker v. Hilliker,* 828 P.2d 1205, 1206 (Alaska 1992).

**40.** *See Horton v. Hansen,* 722 P.2d 211, 218 (Alaska 1986) (noting that vexatious conduct by one party that leads to increased attorney's fees will justify a fee award to the burdened spouse).