**NOTICE**

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

## THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| DONNA LOHRKE, ) | |
| ) | Supreme Court No. S-19024 |
| Appellant, ) | |
| ) | Superior Court No. 3KN-22-00202 CI |
| v. ) | |
| ) | MEMORANDUM OPINION |
| CHRISTOPHER SORRELS, ) | AND JUDGMENT* |
| ) | |
| Appellee. ) | No. 2128 – January 14, 2026 |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Kenai, Jason M. Gist, Judge.

Appearances: Carl Bauman, Law Offices of Carl Bauman, Soldotna, for Appellant. Shana Theiler, Walton, Theiler & Winegarden, LLC, Kenai, for Appellee.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

## I. INTRODUCTION

This appeal concerns division of property after divorce. The former wife challenges numerous rulings related to the classification, valuation, and division of property, as well as the court's decision to award her some but not all of her claimed attorney's fees. Seeing no error or abuse of discretion in the superior court's rulings, we affirm its judgment.

---

\* Entered under Alaska Appellate Rule 214.

## II. FACTS AND PROCEEDINGS

### A. Facts

Donna Lohrke and Christopher Sorrels met in July 2012. They dated on and off until they married in July 2018. At the time of marriage, both Lohrke and Sorrels were 52 years old.

When they met in 2012, Lohrke worked at a feed store and Sorrels at an oil company. Since then, Lohrke has held a number of jobs, including working at a grocery store and a veterinary clinic. Sorrels continued to work at the oil company until he retired in 2020. He received a severance package upon retirement. He then returned to work as an instrument technician for a different company in 2022.

Lohrke and Sorrels each owned a separate residence prior to marriage. Shortly after their marriage, Lohrke and Sorrels purchased their first joint property. The couple split time between this home and Lohrke's premarital home. They opened a business account to manage income from renting the premarital properties.

Lohrke and Sorrels separated in November 2021. Lohrke filed for divorce a few months later.

### B. Proceedings

A trial was held in 2023 over the division of marital assets. Lohrke and Sorrels testified regarding various items of property and the duration and nature of their relationship.

In its property division order, the court generally treated all property acquired prior to marriage as the separate property of the person that acquired it. It found that neither party had expected to acquire an ownership interest in the other's premarital property. The court found that the parties did not significantly commingle funds prior to marriage. It did, however, find that Lohrke's premarital home had been transmuted into marital property.

The court then considered how to divide the marital property. It explained that rescission[1] would be inappropriate. Although the court characterized the parties' marriage as very short, it reasoned that the property acquired during the marriage should be treated as marital and equitably divided. The court accordingly looked to the parties' financial situations at the time of marriage: Sorrels earned significantly more money than Lohrke but had entered the marriage with much of his wealth. The court found that because Sorrels was "very well established in his career by July of 2018," "[t]his was not a long marriage where one party significantly enhanced their earning capacity over the course of, and through the efforts of, the marriage." The court found that Lohrke's earning capacities before and after marriage were "nearly identical," based on the jobs she held and her lack of a college degree.

The court also noted that Sorrels had used his separate money to pay Lohrke's premarital debts, that rent generated from Sorrels's premarital residence went directly to pay off the mortgage on Lohrke's premarital residence, and that Lohrke had removed $18,000 from one of Sorrels's bank accounts just before the parties separated. Balancing these facts against Sorrels's significantly greater earning potential, the court divided the marital estate (which it valued at roughly $293,000) 60/40 in favor of Lohrke.

Lohrke moved for an award of attorney's fees totaling $9,072. The superior court found that Sorrels was "in a far superior economic position" and therefore should be required to pay Lohrke's attorney's fees. But it also found that Lohrke "spent an inordinate amount of time litigating property items that [Sorrels] owned before marriage," even though it was clear that such property was his separate property to

---

[1]     The goal under a rescission theory of property division is to "plac[e] the parties in, as closely as possible, the financial position they would have occupied had no marriage taken place." *Rose v. Rose*, 755 P.2d 1121, 1125 (Alaska 1988). Rescission is appropriate when parties have not been married for a long duration and assets have not been commingled. *Dunn v. Dunn*, 952 P.2d 268, 273 (Alaska 1998).

which she had no valid claim. The court explained that Lohrke's "extensive litigation on these issues prolonged the litigation unnecessarily." Accordingly, it awarded Lohrke only $5,000 of the $9,072 she had requested.

Lohrke appeals.

## III. DISCUSSION

### A. Lohrke Fails To Show Factual Or Legal Errors In The Superior Court's Property Division.

"There are three basic steps in the equitable division of marital assets: (1) deciding what specific property is available for distribution, (2) finding the value of the property, and (3) dividing the property equitably."[2] We analyze the three steps for the equitable division of marital property below.

#### 1. Lohrke's property classification arguments are inadequately briefed and therefore waived.

The first step in marital property division requires the superior court to characterize the parties' property as marital or separate.[3] Generally speaking, only marital property is subject to division.[4] Property that a person acquires before marriage is generally treated as that person's separate property and is not subject to division.[5]

Lohrke argues for a share of proceeds from the sale of Sorrels's premarital home and a share of a cabin he acquired prior to marriage. However, these arguments are contrary to her trial testimony, where she disclaimed any interest in the sale proceeds from Sorrels's premarital residence and asserted that she chose not to have her name placed on the title to the cabin because she and Sorrels were not married. And her

---

[2] *Stanhope v. Stanhope*, 306 P.3d 1282, 1286 (Alaska 2013) (quoting *Beals v. Beals*, 303 P.3d 453, 458-59 (Alaska 2013)).

[3] *Id.*

[4] *Schmitz v. Schmitz*, 88 P.3d 1116, 1124 (Alaska 2004).

[5] *Id.* There are exceptions, such as when separate property is transmuted into marital property, or when the value of separate property increases due to active marital contributions (the doctrine of "active appreciation"). *Id.* at 1125.

appellate brief does not apply the rules of transmutation or active appreciation — the doctrines by which separate property may become marital — to any particular properties. Consequently, these arguments are waived due to inadequate briefing.[6]

### 2. The superior court did not clearly err in assigning values to items of marital property.

"The second step [of marital property division], valuation of assets, is a factual determination that we review for clear error."[7] Lohrke challenges the value the superior court assigned to certain items of marital property.

### a. Retirement account

The superior court awarded Lohrke 14% of Sorrels's retirement funds, reflecting the proportion of the retirement earned during the marriage. Lohrke argues that the superior court incorrectly valued the retirement funds by using the balance of Sorrels's retirement account as of the date of trial ($557,695) as opposed to the balance of the account as of the date of the parties' November 2021 separation ($747,367.20).[8]

"[W]hile the date for classification of property is that of separation, the proper date for valuation is one as close as practicable to that of trial."[9] The superior court may approve a different valuation date in two circumstances: "(1) where 'one of the spouses dissipates assets or deliberately allows their value to decline following

---

[6] *Hagen v. Strobel*, 353 P.3d 799, 805 (Alaska 2015); *State v. O'Neill Investigations, Inc.*, 609 P.2d 520, 528 (Alaska 1980) ("When, in the argument portion of a brief, a major point has been given no more than [a] cursory statement, we will not consider it further. Failure to argue a point constitutes an abandonment of it.").

[7] *Beals*, 303 P.3d at 459.

[8] The superior court specifically accounted for a withdrawal of approximately $36,000 that Sorrels made in 2023 and assigned him that value. It attributed the remaining difference to market fluctuations and other withdrawals that were used to pay marital expenses.

[9] *Cox v. Cox*, 882 P.2d 909, 917 (Alaska 1994).

separation,' or (2) where 'the value of marital property increases due to the efforts of one of the spouses.' "[10]

Lohrke does not explain why one of the exceptions to the general rule applies here. Therefore, her argument is waived.

### b. Marital residence

The superior court valued the marital residence, which the parties purchased during their marriage, at $181,600. The court explained that it derived this amount from the estimate Sorrels provided in the parties' joint property table, which was close to the borough's assessment of $178,300, and that Lohrke did not provide an estimate for this item on the joint property table or in her testimony.

On appeal Lohrke argues that the court's valuation failed to include the value of improvements Sorrels made or the land value of the house. She contends that at least $20,000 of solar panels was added to the house, and that property in the area is "widely known locally to go for $15,000 per acre." But Lohrke does not suggest that she presented any evidence of the home's value at trial. Therefore, we see no clear error in the superior court's valuation of the marital residence.

### 3. The superior court did not err or abuse its discretion in determining that it would be equitable to divide the marital estate 60/40 in Lohrke's favor.

The third step of property division is to divide the property equitably between the parties.[11] "An equal division of marital property is presumptively just."[12] But "[a] court may order an unequal property division after considering the factors

---

[10] *Stevens v. Stevens*, 265 P.3d 279, 285 (Alaska 2011) (quoting *Ogard v. Ogard*, 808 P.2d 815, 820 (Alaska 1991)). "The trial court's determination of which date to use for purposes of valuing property is reviewed for an abuse of discretion." *Id.* at 284.

[11] *Stanhope v. Stanhope*, 306 P.3d 1282, 1286 (Alaska 2013).

[12] *Pfeil v. Lock*, 311 P.3d 649, 652-53 (Alaska 2013).

enumerated in AS 25.24.160(a)(4), as long as the division is 'just' and 'fair.' "[13]  The court "need not make findings pertaining to each factor, but its findings must be sufficient to indicate the factual basis for the conclusion reached."[14]  The court "has wide discretion to ascribe different weights to these factors upon hearing the evidence at trial,"[15] and we reverse only for abuse of discretion.[16]

We address Lohrke's assertion that the superior court misapplied several relevant factors.  But we see no errors or abuse of discretion.

### a.  Length of marriage and station in life

Lohrke first argues that the trial court incorrectly characterized the parties' marriage as "very short."  She compares the length of the parties' marriage — 40 months — to the 18-month marriage in *Rose v. Rose*[17] and the 32-month marriage in *Zimin v. Zimin*.[18]  We are not persuaded by her argument.

First, the legal authority Lohrke cites does not suggest any error by the superior court here.  *Rose* did not involve equitable division of marital property.  Rather, the case involved the remedy of rescission, which the court has discretion to use when the marriage is short and the parties' assets have not been commingled.[19]  The superior court did not employ rescission here, so it did not need to use this case as a benchmark.  In *Zimin*, while we noted that the marriage was 32 months long, we rejected the argument for rescission because the parties had "significantly commingled their

---

[13]    *Id.* at 653.

[14]    *Nicholson v. Wolfe*, 974 P.2d 417, 422 (Alaska 1999) (footnote omitted).

[15]    *Cartee v. Cartee*, 239 P.3d 707, 715 (Alaska 2010).

[16]    *Stanhope*, 306 P.3d at 1286-87.

[17]    755 P.2d 1121, 1125 (Alaska 1988).

[18]    837 P.2d 118, 121 (Alaska 1992).

[19]    *Rose*, 755 P.2d at 1125.

assets."[20]  The length of the marriage as a factor for equitable property division was not considered on appeal.[21]  Consequently, Lohrke's reliance on *Zimin* is also misplaced.

Second, we see no clear error in the superior court's factual findings on this issue.  The parties met and began dating in July 2012.  They got married in July 2018. They separated in November 2021.[22]  A final divorce decree was entered in January 2023.  And in light of the other factual findings the court made about the parties' finances, we see no clear error in the superior court's finding that "[t]his was not a long marriage where one party significantly enhanced their earning capacity over the course of, and through the efforts of, the marriage."

Third, we see no abuse of discretion in the court's reliance on this finding to favor Lohrke modestly, but not overwhelmingly, when dividing the marital estate. Given the limited duration of the parties' marriage and the fact that Sorrels entered the marriage with much of his wealth, it was not manifestly unjust for the court to divide the marital estate to reflect each party's financial position prior to marriage.

b.     **Financial condition of the parties, including the cost and availability of health insurance**

Lohrke first appears to argue that the superior court did not properly consider this factor because it assigned either no value or an incorrect value to a number of separate property items belonging to Sorrels.  These encompass two boats,[23] several

---

[20]     *Zimin*, 837 P.2d at 121.  We also noted that one of the spouses had stopped working to become a homemaker and that the spouses "did not maintain 'completely separate economic identities.' " *Id.*

[21]     *See id.*

[22]     Lohrke argues that Sorrels's counsel incorrectly contended before the superior court that the parties separated in 2020.  Though Lohrke is correct about counsel's mistake, the court nevertheless found that the parties separated in 2021.

[23]     Although Lohrke mentions that she worked on the boats several times before she and Sorrels were married, she does not make any active appreciation

cars, a collection of guns and ammunition, and Sorrels's lifetime medical insurance. Lohrke's argument seems to be that the court did not have an accurate picture of the disparity between the parties' net worth because it did not assign specific values to all of these items.

We are not persuaded by this argument. The superior court acknowledged that Sorrels's financial position was far superior to Lohrke's. The court's decision specifically quoted Lohrke's closing argument that Sorrels was "wealthy and well set financially with over a half million dollars in retirement accounts, two big boats in Sitka, etc." when describing the parties' relative financial positions. Lohrke does not point to any authority suggesting that the court errs if it does not assign specific values to items of separate property when evaluating parties' relative financial condition in divorce. Because items of separate property are not subject to division, precise determinations of value are not essential. The court need only determine the parties' relative financial condition. We conclude that, under the circumstances, the court's findings about Sorrels's relative wealth are sufficiently detailed to support its ruling. It was not required to assign specific values to separately owned cars, off-road vehicles, or guns in reaching its conclusion.

In discussing the financial condition of the parties, the court recognized that Sorrels had medical insurance, while Lohrke did not. Lohrke argues that the court should have assigned a value to Sorrels's lifetime medical coverage. She argues that because she brought to the superior court's attention our decision in *Ethelbah v. Walker*, in which one spouse's future medical coverage was valued at more than $100,000,[24] the superior court should have similarly attributed value to Sorrels's medical coverage.

---

argument about the boats' value, and therefore such argument is waived. *Griswold v. City of Homer*, 556 P.3d 252, 273 n.99 (Alaska 2024).

[24] 225 P.3d 1082, 1086 (Alaska 2009).

We are not persuaded by this argument. Lohrke did not present any actual evidence of the value of Sorrels's future medical coverage. Given the lack of evidence on this point, the superior court's general acknowledgement that Sorrels had medical insurance while Lohrke did not was not an abuse of discretion.

### c. Conduct of the parties

The superior court, while noting Sorrels's superior financial position, also noted that (1) Sorrels had paid off some of Lohrke's premarital debts with his separate funds and (2) Lohrke had withdrawn $18,000 from one of Sorrels's bank accounts prior to separation. In light of these factors, it rejected Lohrke's proposed 75/25 split in favor of a 60/40 split.

Lohrke challenges the court's factual findings and, seemingly, its reliance on these payments. She first disputes that she withdrew the $18,000 "just before" the parties separated. Lohrke argues that she withdrew the amount almost one year before the parties separated, and that $3,000 of this amount was used to fund Sorrels's daughter's wedding.

It was not clearly erroneous to say that Lohrke withdrew the funds "just before" the parties separated. The parties were married for 40 months, and the withdrawal happened about 11 months before their separation. But more to the point, even if the withdrawal did not happen "just" before the separation, the court did not abuse its discretion by considering that Lohrke took Sorrels's funds without his permission and spent some of them on her personal needs.

The court's finding that Sorrels had used his separate money to pay Lohrke's premarital debts was based on the parties' testimony and is also not clearly erroneous. Lohrke argues that Sorrels did not pay as much as he claimed. But she does not point to any evidence to support this assertion, so it is waived.[25]

---

[25]    *Griswold*, 556 P.3d at 273 n.99.

Taking into account Sorrels's finances, his earning potential, and the support he had already provided Lohrke — and considering the "wide discretion" the superior court has in weighing the equitable factors[26] — the court did not abuse its discretion in ruling that a 60/40 split of the marital assets in favor of Lohrke was equitable.

### 4. The superior court did not abuse its discretion by declining to invade Sorrels's separate property.

Lohrke argues that the superior court abused its discretion by declining to invade the portion of the retirement savings Sorrels earned prior to marriage, which was his separate property. She cites our decision in *McLaren v. McLaren*, which upheld the superior court's decision to equitably divide a portion of a retirement account earned during a period of premarital cohabitation.[27] In that case we noted that the superior court is "free to consider the parties' entire relationship, including any period(s) of premarital cohabitation, in making its property division under AS 25.24.160(a)(4)."[28] But we also affirmed that the "general rule is that courts divide property 'acquired only during marriage.' "[29] We review the superior court's decision on this point for abuse of discretion.[30]

Lohrke fails to convince us that applying the general rule here was an abuse of discretion. She cites two cases but neither offers much support. In both cases trial courts decided to treat retirement benefits earned during a period of premarital

---

[26]     *Cartee v. Cartee*, 239 P.3d 707, 715 (Alaska 2010).

[27]     268 P.3d 323, 332-35 (Alaska 2012).

[28]     *Id.* at 332 (quoting *Murray v. Murray*, 788 P.2d 41, 42 (Alaska 1990)).

[29]     *Id.* (quoting AS 25.24.160).

[30]     *Id.*

cohabitation as marital, and we affirmed the courts' exercise of discretion.[31] But it was reasonable for the superior court to apply the general rule here given the findings it made. The court found that when Lohrke and Sorrels separated between August 2017 and April 2018, "neither of them had any expectation at that time as to the others' property acquired between 2012 and 2017." The court further indicated that there was "no basis" for it to conclude that the parties "significantly comingled funds prior to marriage." Indeed, Lohrke testified that the parties did not share financial accounts before they split in August 2017. Finally, Lohrke herself acknowledged, in her written closing, that the equities could be balanced with an uneven split of marital property rather than invasion of Sorrels's separate property. Therefore, we see no abuse of discretion in the court's unwillingness to invade separate property acquired prior to marriage.

Lohrke may also be suggesting that all of Sorrels's severance payment, which was received while the parties were married, is marital. But Lohrke's brief never explicitly references the severance payment, discusses its purpose,[32] or explains why the severance payment should be treated as fully marital. Nor does she acknowledge testimony that a substantial portion of the severance payment was spent during the marriage. Therefore, this argument is also waived due to inadequate briefing.[33]

---

[31] *Id.* at 333; *Faulkner v. Goldfuss*, 46 P.3d 993, 1002-03 (Alaska 2002) (explaining that "the basis for calculating the marital share is not necessarily limited to the period of the parties' marriage").

[32] The classification of a severance payment depends on its purpose: whether the payment is awarded as compensation for "prior marital services" or as compensation for lost future earnings will affect whether the payment, or some portion of it, is marital or separate. *Hudson v. Hudson*, 532 P.3d 272, 279 (Alaska 2023) (explaining that severance payment received by spouse after separation would be marital property if payment's purpose was to compensate for past service to employer during marriage, while payment would be separate if intended to offset spouse's lost future earnings).

[33] *Griswold v. City of Homer*, 556 P.3d 252, 273 n.99 (Alaska 2024).

**B.** **The Superior Court Did Not Abuse Its Discretion In Awarding Lohrke Partial Attorney's Fees.**

Lohrke challenges the superior court's decision to award her only a portion of the attorney's fees she requested. We review an award of attorney's fees for abuse of discretion.[34] We see no abuse of discretion here.

An award of attorney's fees in divorce actions is to be based "primarily on the relative economic situations and earning powers of the parties."[35] But the court may also consider a party's litigation conduct.[36] A court "must first determine whether fees are appropriate under the general rule looking to the parties' economic situations; it may then increase any award based on misconduct by one of the parties."[37]

The superior court followed the required two-step process. It first found that Sorrels was "in a far superior economic position relative to [Lohrke]." Specifically, Sorrels earned "well over double" what Lohrke did. Sorrels also had "several hundred thousand dollars in retirement accounts" and a pension to live on. The court therefore concluded that Sorrels should be required to pay some amount of Lohrke's attorney's fees.

The court next found that Lohrke's approach to litigation was "less than good faith." It noted that Lohrke had claimed a marital stake in various pieces of property that the parties had clearly not intended to become marital property. For instance, Lohrke sought at least half the value of a classic car that Sorrels purchased before he even met her. She also sought equity in two boats and other items Sorrels owned either before he met Lohrke or before their last breakup in August 2017. Lohrke

---

[34]    *Bush v. Elkins*, 342 P.3d 1245, 1251 (Alaska 2015).

[35]    *Hooper v. Hooper*, 188 P.3d 681, 691-92 (Alaska 2008).

[36]    *Beal v. Beal*, 88 P.3d 104, 122 (Alaska 2004).

[37]    *Id.*

argues that "she simply tried to protect herself from the weight that [Sorrels] employed against her to give her nothing for the 10-year relationship between the parties."

The superior court's view of Lohrke's litigation approach is supported by the record. The court noted that the property Lohrke claimed as marital was clearly Sorrels's separate property. And although the court's attorney's fee ruling did not address Lohrke's alternative argument to invade Sorrels's premarital property, this argument was baseless too. "[T]he decision to invade separate property may be undertaken only after the trial court has attempted to use the marital estate to balance the equities."[38] And as noted above Lohrke conceded that the equities could be balanced with an uneven split of marital property. In so doing, she effectively conceded there was no basis to invade Sorrels's separate property. Her unwarranted focus on Sorrels's separate property made the litigation more time-consuming and expensive than necessary. Therefore, we cannot say the superior court abused its discretion in finding her litigation strategy dubious and awarding only a portion of the fees incurred pursuing it.

## C. Other Arguments Are Waived Or Unavailing.

Lohrke mentioned a number of arguments in her points on appeal that she failed to develop in the briefing. This includes her argument that the superior court erred by failing to award her spousal support, failing to admit testimony concerning the valuation of her premarital home, failing to require Sorrels to remove Lohrke from the mortgage on the house the pair jointly purchased, failing to value a collection of guns and ammunition, and significantly undervaluing Sorrels's tool collection. We consider all these arguments waived.[39]

---

[38] *Odom v. Odom*, 141 P.3d 324, 340 (Alaska 2006).

[39] *See Hagen v. Strobel*, 353 P.3d 799, 805 (Alaska 2015); *Griswold v. City of Homer*, 556 P.3d 252, 273 n.99 (Alaska 2024).

Lohrke also suggests that Sorrels cancelled her health insurance in violation of the domestic relations standing order. But this is not so. The standing order provides in relevant part: "In Divorce Actions only, the parties shall not cancel or alter the terms of any insurance policy without the other party's written consent or court order." The injunction was to remain "in effect until the Entry of Decree." Lohrke states in her opening brief that Sorrels cancelled her medical coverage "as soon as the decree of divorce was entered on January 20, 2023." The standing order did not bar him from doing so. Therefore, the argument fails.

## IV. CONCLUSION

We AFFIRM the judgment of the superior court.